Kimberly Donaldson Smith (PA No. 84116)
Benjamin F. Johns (PA No. 201373)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone:  (610) 642-8500
Facsimile: (610) 649-3633

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PENNSYLVANIA
EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIG LENELL, THOMAS URBANEK, and JARED PELA on behalf of themselves and all others similarly situated, | : : : | Civil Action No. |
| | : | <u>CLASS ACTION</u> |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| ADVANCED MINING TECHNOLOGY, INC. (a/k/a ADVANCED MINING TECHNOLOGIES, INC); JOSHUA ZIPKIN; and JIM BROWN, | : : : | <u>JURY TRIAL DEMANDED</u> |
| | : | |
| | : | |
| Defendants. | : | |

**<u>COMPLAINT</u>**

Plaintiff Craig Lenell, Plaintiff Thomas Urbanek, and Plaintiff Jared Pela (collectively,

"Plaintiffs") bring this action individually and on behalf of all other persons similarly situated,

by and through their attorneys, against Defendants Advanced Mining Technology, Inc. a/k/a

Advanced Mining Technologies, Inc. ("AMT"), and AMT founders, owners and/or employees

Joshua Zipkin and Jim Brown (collectively, "Defendants"), and allege the following based upon

personal knowledge as to themselves and their own acts, and information and belief as to all

- 1 -

Plaintiffs' Class Action Complaint

other matters based upon, *inter alia*, the investigation of counsel and public statements issued by AMT.

**INTRODUCTION**

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of persons who purchased "Bitcoin Miners" from Defendants.  Defendants hold themselves out to the public and Class as a manufacturer of Bitcoin Miners, which are machines that "mine" bitcoins.

2.      Bitcoin is a type of digital or virtual currency that can be traded for goods and services with third parties who accept them.  As of April 2, 2014, the current valuation of a bitcoin was approximately $463.00.[1]  The "mining" of bitcoins is a process by which computer hardware is used to obtain bitcoins by processing mathematical calculations.  Not only does the mathematics of the bitcoin system become progressively more difficult, but bitcoin mining becomes increasingly more competitive, making the opportunity to profit from bitcoin mining more challenging and more dependent on the quality of the mining equipment.

3.      The Bitcoin Miners sold by Defendants are designed to be used in this process, purportedly to generate bitcoins for users.  The Bitcoin Miners sold by Defendants range in price from approximately $1,499 to $14,999.  Below is an image of the 1.2TH/s Coin Miner model that is most frequently promoted on Defendants' website and is the most purchased Bitcoin Miner.  As of March 30, 2014, Defendants' website homepage, shown below, continued to advertise that the popular 1.2TH/s Coin Miners were available for April delivery.

---

[1] https://bitpay.com/bitcoin-exchange-rates

Plaintiffs' Class Action Complaint





4.      Since mid-2013, the members of the Class have paid Defendants millions of dollars for Bitcoin Miners.  However, Defendants have failed to deliver the Bitcoin Miners to the Class, and the handful of Bitcoin Miners that have been reportedly received by bona fide purchasers were delivered following undue delay.  Such failures have caused the Class millions of dollars in damages.

5.      This action arises from Defendants' failure to deliver the purchased mining products within the specified delivery window and/or failure to deliver the purchased mining products altogether to Plaintiffs and the Class.  Additionally, Defendants continue to exhibit an unwillingness to refund customers for the Bitcoin Miner orders that were never received, or compensate Class members who suffered lost opportunity as a result of delayed delivery.

6.      As discussed below, time is of the essence when it comes to the mining of bitcoins.  The longer one waits to begin the process, the more difficult it becomes to acquire new bitcoins.  Accordingly, the Defendants' systematic delays in the delivery of Bitcoin Miners have effectively decreased their value.

7.      Notwithstanding these pervasive delivery problems, Defendants continue to advertise quick turnaround deliveries and accept new orders while failing to fulfill and/or refund existing customer orders.  After a customer places an order, Defendants assure them that the Bitcoin Miner will be delivered within a certain time frame, typically six weeks or less; however,

Defendants fail to adhere to its communicated delivery schedule.   Therefore, Defendants' statements are materially and knowingly misleading.

8.      Dissatisfied customers have attempted to communicate with Defendants by phone, email, and in person to request delivery updates and/or demand refunds, but Defendants have been unresponsive and ignorantly obstinate that they are purportedly fulfilling orders.

9.      Defendants' improper and illegal business practices extend beyond just their failure to deliver Bitcoin Miners that have been paid for in full by the Class.   In reaction to warranted consumer complaints, Defendants have demanded that members of the Class refrain from posting and warning other potential customers about Defendants' failures, and threatened to withhold or further delay delivery of products or promised refunds to the members of the Class. Moreover, all indications are that Defendants' operations are a sham, and, at minimum, Defendants lack the capability to meet the demand for the orders (and payments) they continue to accept.

10.      Plaintiffs and the Class were misled about Defendants' business and operations, and Defendants concealed that they were taking payments from customers but not fulfilling orders, not refunding customers for failure to deliver the purchased Bitcoin Miners, and lacked sufficient, if any, operational capacity to fulfill the orders.

11.      As a result of Defendants' unfair, deceptive and fraudulent business practices, Plaintiffs and the Class have suffered injury in fact, damages, and experienced lost opportunity. Plaintiffs and Class members never received the Bitcoin Miners they paid for, and were deprived of the timely use of the Bitcoin Miners to mine bitcoins due to Defendants' failure to adhere to the avowed delivery schedule.   During the lapsed time the valuation of a bitcoin has fluctuated

- 4 -

Plaintiffs' Class Action Complaint

significantly, and bitcoin mining has become increasingly more competitive and more difficult, thus rendering the purchased Bitcoin Miners devalued and obsolete.

12.     Accordingly, Plaintiffs bring this action to redress damages to them and the Class due to Defendants' breach of contract, breach of express warranty, common law fraud, negligent misrepresentation, breach of the duty of good faith and fair dealing, unjust enrichment, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, the North Carolina Unfair and Deceptive Trade Practices Act, the Florida Deceptive and Unfair Trade Practices Act, and the Utah Consumer Sales Practices Act.

## PARTIES

### Plaintiff Craig Lenell

13.     Plaintiff Craig Lenell ("Plaintiff Lenell") is a resident of, and domiciled in, the State of North Carolina.

14.     On November 11, 2013, Plaintiff Lenell placed an order for a 1.2TH/s Coin Miner (Order #610) and paid in full for the Bitcoin Miner in the amount of $5,959 by wire transfer on December 9, 2013.  Defendants' affirmatively stated in email correspondence that the 1.2TH/s Coin Miner would be delivered the "first week of January."

15.     Then on December 10, 2013, Plaintiff Lenell placed a second order, using his credit card, through Defendants' website for a 80 GH/s Coin Miner (Order #975) totaling $1,705. Despite the payment option information provided on Defendants' website and confirmed through direct correspondence with Defendants, Defendants refused to process the credit card order.

16.     As of April 1, 2014, Plaintiff Lenell has not received the 1.2TH/s Coin Miner that he ordered and paid for in full on December 9, 2013.  As discussed in more detail below,

Plaintiffs' Class Action Complaint

Plaintiff Lenell has followed up with Defendants numerous times to no avail.  Plaintiff Lenell has been and continues to be damaged by the acts alleged herein.

**Plaintiff Thomas Urbanek**

17.     Plaintiff Thomas Urbanek ("Plaintiff Urbanek") is a resident of, and domiciled in, the State of Florida.

18.     On December 4, 2013, Plaintiff Urbanek placed an order for three (3) 1.2TH/s Coin Miners (Order #870) from Defendants and paid in full for the Bitcoin Miners in the amount of $18,157 using Bitpay, an electronic payment processing system that instantly converts bitcoins into the seller's currency of choice.

19.     Defendants stated that the three 1.2TH/s miners were scheduled for delivery between February 4, 2014 and February 10, 2014.  After unsuccessful attempts to receive a shipment update, Plaintiff Urbanek requested a refund on March 3, 2014.

20.     As of April 1, 2014, Plaintiff Urbanek has not received the three 1.2TH/s Coin Miners that he ordered and paid for in full on December 4, 2013.  As discussed in more detail below, Plaintiff Urbanek has followed up with Defendants numerous times to no avail.  Plaintiff Urbanek has been and continues to be damaged by the acts alleged herein.

**Plaintiff Jared Pela**

21.     Plaintiff Jared Pela ("Plaintiff Pela") is a resident of, and domiciled in, the State of Utah.

22.     On December 13, 2013, Plaintiff Pela placed an order for a 1.2TH/s Coin Miner (Order #1072) from Defendants and paid for in full in the amount of $6,089 using bitcoins via Coinbase, an online bitcoin wallet for sending, receiving, and storing bitcoins.

23.     Defendants stated that the 1.2TH/s model was scheduled to ship the first week of February 2014.

24.     As of April 1, 2014, Plaintiff Pela has not received the 1.2TH/s Coin Miner that he ordered and paid for in full on December 13, 2013.  As discussed in more detail below, Plaintiff Pela has followed up with Defendants numerous times to no avail.  Plaintiff Pela has been and continues to be damaged by the acts alleged herein.

**The Defendants**

25.     Defendant Advanced Mining Technology, Inc. (a/k/a Advanced Mining Technologies) ("AMT") holds itself out as a manufacturer of specialized technology equipment used to mine bitcoins. According to AMT, it has been shipping AMT Bitcoin Miners since November 2013.

26.     AMT inconsistently operates under alternating company names, Advanced Mining **Technology**, Inc. and Advanced Mining **Technologies**, Inc. (emphasis added).  AMT's official website, sales agreement, and office building signage all refer to the company as Advanced Mining Technology, Inc.  The Defendants' email signatures list the company name as Advanced Mining Technology.  However, in blog posts and You Tube videos uploaded by Defendants, they refer to AMT as Advanced Mining Technologies, Inc.  Additionally, the Domain Name System (DNS) registrant name for Defendants' website is listed as Advanced Mining Technologies, Inc.

27.     While Defendants have affirmatively claimed on the bitcoin internet forum, Bitcoin Talk (https://bitcointalk.org/index.php?topic=304605.3660), that they are registered in Delaware, that assertion cannot be confirmed or denied due to the Defendants' inconsistent treatment of the company's name.  However, there is a business entity by the name of Advanced

Plaintiffs' Class Action Complaint

Mining Technologies, Inc. that registered in the State of Delaware (File Number: 5341525) on May 29, 2013.

28.     As of December 2013, AMT moved its principal place of business from 1254 West Chester Pike, Havertown, PA 19083 to 355 Lancaster Avenue, Building E1, Haverford, Pennsylvania 19041.  According to the signage, the small office space is shared with Madison Mortgage Services, a fictitious entity that registered in Pennsylvania (File Number: 2814954) on May 4, 1998.

29.     The exterior of the two story office building located at 355 Lancaster Avenue, Building E1, Haverford, Pennsylvania 19041 is shown below.  The signage on the exterior of the building and on the door of the small first floor office space indicates that AMT shares the office with Madison Mortgage Services.



30.     On information and belief, Defendant Joshua Zipkin ("Zipkin") is a resident of Pennsylvania and is a founder, owner, officer and/or employee of AMT.  At all times mentioned herein, Zipkin was acting within the course and scope of his authority as an owner, co-owner,

Plaintiffs' Class Action Complaint

agent, representative and/or alter ego of their co-defendant, and with the full knowledge, permission and consent of each and every other defendant in committing the acts hereinafter alleged.

31.     On information and belief, Defendant Jim Brown ("Brown") is a resident of Pennsylvania and is a founder, owner, officer and/or employee of AMT. At all times mentioned herein, Brown was acting within the course and scope of his authority as an owner, co-owner, agent, representative and/or alter ego of their co-defendant, and with the full knowledge, permission and consent of each and every other defendant in committing the acts hereinafter alleged.

## JURISDICTION AND VENUE

32.     AMT, Zipkin and Brown are subject to personal jurisdiction in this Court because they reside in this judicial district, AMT's principal place of business is within this district, and all Defendants have engaged in systematic and continuous contacts with this district by virtue of their business activities.

33.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because AMT's principal place of business is in this judicial district, Defendants reside and conduct business in the district, and because a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

34.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.

## FACTUAL ALLEGATIONS

**A.  The Bitcoin Mining Process.**

35.     Bitcoin is a "cryptocurrency", a type of computer-driven virtual currency which has gained momentum since its introduction in 2009.  As a result, the Internal Revenue Service issued a formal notice, IR-2014-36, on March 25, 2014 declaring that bitcoin will be treated as property, not currency, for federal tax purposes.  Unlike traditional currencies, which are issued by central banks, bitcoin has no central monetary authority.  Instead, it is underpinned by a database of valid bitcoins maintained over a peer-to-peer network made up of its users' machines.  The entire network is used to monitor and verify both the creation of new bitcoins through mining, and the transfer of bitcoins between users.

36.     New bitcoins are generated by a competitive and decentralized process called "mining".  Bitcoin mining means, essentially, "generating bitcoins".  Bitcoin Miners are machines that use technology to process transactions, specifically, to solve complex mathematical algorithms, to mine, or generate, a bitcoin.  The bitcoin market is extremely volatile.  As of April 1, 2014 the current valuation of a bitcoin was approximately $463.00.[2]

37.     Bitcoin mining is a very competitive business.  Bitcoins are created at a fixed rate and the total number of bitcoins that can ever be mined is capped at approximately 21 million.  Not only does the mathematics of the bitcoin system become progressively more difficult making bitcoins more difficult to mine, but as more miners join the network it becomes increasingly difficult to make a profit.[3]   For this reason, it is critical that someone looking to profit from bitcoin mining begin the process as soon as possible.

---

[2] https://bitpay.com/bitcoin-exchange-rates
[3] https://bitcoinwisdom.com/bitcoin/difficulty

Plaintiffs' Class Action Complaint

38.     Moreover, ever-increasing computing power is necessary to mine the same amount of bitcoins.  Consequently, prompt acquisition of the latest technology with optimal processing power is critical for miners and so is the timing of the Bitcoin Miner shipments since the computing equipment continually becomes less efficient at processing, thus less valuable over time.

39.     While there is no tangible currency, bitcoins can be bought and sold in return for traditional currency on several exchanges, and can also be directly transferred across the internet from one user to another.   Bitcoins are stored on computers or held by the purchaser or a third party in a so-called virtual wallet.  Once the bitcoins are in the virtual wallet, they can be used to purchase items from any merchant willing to accept them or sell them to someone willing to buy them.

**B.  <u>AMT.</u>**

40.     According to its website, AMT develops SHA-256 coin mining technology for personal and business level mining devices. AMT refers to itself as "a technology manufacturer", "created to provide the average investor with the ability to participate in the new digital currency economy."

41.     AMT also states on its website that AMT "mining technology is built with application-specific integrated circuit (ASIC) 28mn chips in order to provide our clientele with the best mining hardware available on the market."

42.     AMT also touts that it brings its customers, "the ability to participate in the markets of tomorrow, today. We believe that a massive opportunity to profit from coin mining exists for anyone who is equipped with the proper technology. As with any great development opportunity, risk is attached. At AMT, we endeavor to mitigate the risk for our clientele by

offering customized hardware with modular options which allow customers to upgrade easily. Let us help you reap rewards through the use of our technological capabilities and extensive cryptocurrency experience."

43.     AMT sells the following Bitcoin Miners: 80 GH/s Coin Miner ($1,499), AMT 128 GHs Bitcoin Miner ($1,599), AMT 180 GHs Bitcoin Miner ($1,899), AMT 220 GH/s Coin Miner ($2,899), 320 GH/s Coin Miner ($3,199), 520 GH/s Coin Miner ($3,999), and 1.2TH/s Coin Miner ($5,599), AMT 2.4Th/s Bitcoin Miner ($9,999), AMT 3.2THs Bitcoin Miner ($14,999)(collectively, the "AMT Bitcoin Miners").

44.     According to AMT, it has been shipping AMT Bitcoin Miners since November 2013 and claims to "design, build, assemble and ship" a line of high speed ASIC miners.

45.     AMT conducts business and accepts orders exclusively through its website (www.advanceminers.com).

46.     AMT's website provides a phone number that is linked to an automated recording that offers three different options: (1) sales, (2) billing and payment, and (3) technical support and all other questions.  All three options initiate the same recording which states that due to high call volumes callers should leave a message that will be returned by a representative within 24 hours.  Plaintiffs and members of the Class have repeatedly called this number, left messages and have not received responses to their inquiries about their orders and/or requests for refunds.

47.     AMT's website claims to accept various methods of payment including PayPal, bitcoin, check, wire transfer, and credit cards (but only for smaller miner purchases).; however, AMT routinely refuses to process credit card purchases.  The two banks that AMT use for wire transfers include Raiffeisen Bank located in Sofia, Bulgaria, and US Bank.

Plaintiffs' Class Action Complaint

C. **Plaintiff Lenell's Orders From AMT.**

48.     Plaintiff Lenell's order for a 1.2TH/s Coin Miner (Order #610) was placed on November 11, 2013 and paid for in full in the amount of $5,959 by wire transfer on December 9, 2013 to US Bank.  Defendants affirmatively stated in email correspondence that the 1.2TH/s Miner would be delivered the "first week of January."

49.     Then on December 10, 2013, Plaintiff Lenell placed a second order, using his credit card, through Defendants' website for a 80 GH/s Coin Miner (Order #975) totaling $1,705. When Plaintiff Lenell contacted Defendant Brown to confirm his order on December 12, 2013, Defendant Brown responded to Plaintiff Lenell, "Id give up on the CC Craig", and instructed him to pay by either check or wire transfer.

50.     Despite the payment option information provided on Defendants' website and confirmed through direct correspondence with Defendants, Defendants refused to process Plaintiff Lenell's credit card order.  Defendant Zipkin explained in an email dated February 24, 2014 that credit card payments were not yet an option because Defendants were "negotiating commissions and the percentage held of fund and other terms with [their] merchant processor." Plaintiff Lenell was unwilling to purchase the miner using a different form of payment so he forewent the option to buy the 80 GH/s Bitcoin Miner.

51.     Defendants falsely claimed to accept credit card orders in an effort to appear legitimate in the marketplace, but Defendants only accepted payment methods that immediately released non- retractable and non-disputable funds.  Defendants not only told customers directly that credit cards were accepted for smaller orders, but Defendants listed credit cards as a payment method on the website,  allowing customers to submit credit card orders, only to deny

them.  If Defendants were unwilling to process credit cards, then the option should not have appeared on the website nor discussed with customers.

52.     When Plaintiff Lenell did not receive the 1.2TH/s Bitcoin Miner by the stated delivery date he proceeded to email Defendants to ask for a shipment status update.  Defendants failed to respond to Plaintiff Lenell within a reasonable time which prompted Plaintiff Lenell to post honest, personal accounts about his AMT purchasing experience on Amazon.com and Bitcoin Talk.

53.     Defendants lashed back at Plaintiff Lenell for conveying his experiences on the public forums.  In an email from Defendant Zipkin dated February 24, 2014, Defendant Zipkin said that Plainitff Lenell's conduct was "inappropriate and somewhat childish" as well as "immature and relatively uncalled for."  Then Defendant Zipkin went on to demand that Plaintiff Lenell remove the comments, otherwise, "we will not be refunding you or taking any action until you do so."

54.     Plaintiff Lenell removed the reviews in an attempt to induce Defendants to either deliver the two Bitcoin Miners that he purchased or issue him a refund.  Defendants failed to take action, so Plaintiff Lenell re-posted the reviews.

55.     In a March 6, 2014 email, nearly three months after Plaintiff Lenell paid for his 1.2TH/s Bitcoin Miner in full, Defendant Zipkin responded, "remove the links and the bad reviews and we'll send you your refund."  In response, Plaintiff Lenell informed Defendant Zipkin that he was going to file a complaint with the FTC and Delaware County.  This spurred Defendant Zipkin to promptly reply, "Seriously?  Stop screwing around man.  We sent your check out last week!"  Plaintiff Lenell questioned Defendant Zipkin about the contradictory

statements concerning the refund in which Defendant Zipkin had AMT's accounting department confirm that a refund was mailed via regular mail on March 4, 2014.

56.     By March 14, 2014, ten days after Defendant Zipkin claimed to have mailed the refund check, Plaintiff Lenell still had not received it.  After much procrastination and circuitous conversation about the unreliable nature of USPS, Defendant Zipkin claimed that they had to cancel the check and send another one or, he alternatively offered to send a 1.2TH/s Bitcoin Miner to Plaintiff Lenell.

57.     Plaintiff Lenell was displeased with Defendants' conduct and informed Defendant Zipkin on March 16, 2014 that he was filing a complaint with the Better Business Bureau.  In retaliation, Defendant Zipkin revoked his prior offer and indicated that "because of [Plaintiff Lenell's] hostility and complaints, we'll just ship you a miner next week."

58.     As of April 1, 2014, sixteen days since the last exchange with Defendants, Plaintiff Lenell has not received either the 1.2TH/s Bitcoin Miner that he paid for in full or a refund.  Plaintiff Lenell has been and continues to be damaged by the acts alleged herein. Plaintiff has suffered injury in fact in the amount of $5,959 as a result of Defendants' unwillingness to deliver the purchased product and/or issue a refund.  Additionally, Plaintiff experienced lost opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased miner has decreased.

**D.  Plaintiff Urbanek's Order From AMT.**

59.     On December 4, 2013, Plaintiff Urbanek placed an order for three (3) 1.2TH/s Coin Miners (Order #870) from Defendants and paid for in full in the amount of $18,157 using Bitpay, an electronic payment processing system that instantly converts bitcoins into the seller's currency of choice.

Plaintiffs' Class Action Complaint

60.     Defendants stated that the three 1.2TH/s Bitcoin Miners were scheduled for delivery between February 4, 2014 and February 10, 2014.  When the miners were not received within the stipulated delivery window, Plaintiff Urbanek attempted to contact Defendants by phone and email, but was unsuccessful.

61.     It was not until February 27, 2014, that Plaintiff Urbanek received a response from Defendants.  The email claimed that "the entire team is in the manufacturing facility day and night – testing, building, adjusting and so on."    The email failed to supply a revised shipment date, but rather informed Plaintiff Urbanek that Defendants would keep him posted on the shipment of his miners as they move down the waiting list.

62.     Recognizing that the prolonged delay in receiving the three Bitcoin Miners continued to decrease the promised return on investment, Plaintiff Urbanek made his first request for a refund on March 3, 2014, one month after the expected delivery date.  Plaintiff Urbanek's for a refund requests went unanswered until Defendant Brown responded on March 26, 2014.  Defendant Brown claimed that Plaintiff Urbanek's Bitcoin Miners were shipping out in the next few days and that Defendant Brown was personally heading "over to the assembly hall now to see if [he could] bump [Plaintiff Urbanek] up sooner."

63.     As of April 1, 2014, Plaintiff Urbanek has not received the three 1.2TH/s Bitcoin Miners that he ordered and paid for in full on December 4, 2013.  Plaintiff Urbanek has been and continues to be damaged by the acts alleged herein.  Plaintiff has suffered injury in fact in the amount of $18,157 as a result of Defendants' unwillingness to deliver the purchased products and/or issue a refund.   Additionally, Plaintiff experienced lost opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased miner has decreased.

Plaintiffs' Class Action Complaint

E.  **Plaintiff Pela's Order From AMT.**

64.      On December 13, 2013, Plaintiff Pela placed an order (Order #:1072) through Defendants' website for a 1.2TH/s Coin Miner.  At that time, Defendants' promotional banner on the website homepage stated, "AMT 1.2 THs Orders Open for First Week of February Delivery". The total cost of the order was $6,089 which Plaintiff Pela paid for using bitcoins via Coinbase, an online bitcoin wallet for sending, receiving, and storing bitcoins. At the time Plaintiff Pela purchased the Bitcoin Miner the valuation of a bitcoin was approximately $889.00.[4]

65.      On December 16, 2013, Plaintiff Pela emailed Defendants to confirm that his order went through successfully.  Defendants responded that they would look into the order and confirm if payment was received.  Plaintiff Pela did not receive a response so he followed up again on December 18, 2013.  Defendant Brown responded that the order was received and notified Plaintiff Pela that he actually overpaid for the miner and would be issued a refund.

66.      On December 24, 2013, Plaintiff Pela emailed Defendant Brown asking for the status of the refund and questioned if he could pick up the miner from Defendants' office.  On December 26, 2013, Defendant Brown stated that Defendants were encountering problems with the refund process, but confirmed that Plaintiff Pela could pick up the miner directly from Defendants' office when it was ready.

67.      All communication with Defendants ceased after this correspondence, yet Plaintiff Pela continued to email, call and leave voicemails for Defendants asking for a shipment update.  While Defendants refused to respond to Plaintiff concerning his 1.2TH/s Bitcoin Miner, outstanding orders continued to mount; however, Defendants actively accepted new orders,

---

[4] http://www.coindesk.com/price/

Plaintiffs' Class Action Complaint

updated its website homepage announcing miner availability, and committed to impractical shipment dates.

68.     On March 6, 2014, nearly three months after placing the order and a month past the estimated delivery date, Plaintiff Pela emailed Defendants to request a refund for his miner order.  Once again, Plaintiff Pela never received a response.

69.     As of April 2, 2014, Defendants' website homepage, shown in the image below, stated, "AMT 1.2 THs Orders Open April Delivery Still Available."  This is the same model purchased by Plaintiff that he is yet to receive.  Meanwhile, Defendants continue to falsely advertise and accept orders for this model when they have not yet fulfilled the orders dating back over three months.



70.     As of April 1, 2014, Plaintiff Pela has not received the 1.2TH/s Bitcoin Miner that he ordered and paid for in full on December 13, 2013.  Plaintiff Pela has suffered injury in fact in the amount of $6,089 as a result of Defendants' unwillingness to deliver the purchased product and/or issue a refund.  Additionally, Plaintiff Pela is increasingly harmed as more time lapses since the competitive environment of bitcoin mining continues to increase.  As a result, Plaintiff Pela has experienced lost opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased model has decreased.

Plaintiffs' Class Action Complaint

F. **Defendants' Failure to Deliver Purchased Bitcoin Miners and/or Rightfully Issue Refunds.**

71.     Like many members of the bitcoin community, Plaintiffs were participants in the internet message board and community known as Bitcoin Talk (https://bitcointalk.org/index.php?topic=304605.3660).  Bitcoin Talk, along with other websites, is replete with examples from members of the bitcoin community that have encountered the same order fulfillment issues and/or denial of refund by AMT.

72.     Defendants were not only an active participant in this community, but initiated the official "AMT" Bitcoin Talk thread on September 29, 2013, only 19 days after registering its website.[5]

73.     Defendants engaged in a wide range of promotion, all of which can now be discredited, via Bitcoin Talk, including (1) inviting members to visit their office, (2) announcing partnerships and expansions, (3) guaranteeing shipment within four weeks from the date of purchase or a full refund[6], and (4) claiming customers could buy Bitcoin Miners using credit cards.

74.     Most importantly, Defendants publicly committed to various and specific shipment schedules.   On October 29, 2013, Defendants announced that they would "start shipping mid-September orders on Monday the 4th" of November 2013.  For customers that ordered at the end September/early October, "miners will ship from the 4th – 8th" of November 2013.  Mid-October orders "will ship by the 11th –14th" of November 2013.  Defendants stated that the revised purchase – shipment turnaround time was "24 – 28 days."

75.     Defendants then publicly revised the scheduled shipment dates on  February 21, 2014 as follows:  October – early November 2013 orders to ship February 24 – 26, 2014; mid-

---

[5] AMT's introductory Bitcoin Talk post, dated September 29, 2013, was revised on February 1, 2014.
[6] Comment posted by AMT on October 2, 2013.

                                                            Plaintiffs' Class Action Complaint

November 2013 orders to ship February 26 – 28, 2014; end of November 2013 orders to ship March 3 – 5, 2014; early December 2013 orders to ship March 5 –7, 2014;  mid-December 2013 orders to ship March 10 – 14, 2014; end of December 2013 orders to ship March 17 –19, 2014; and January 2014 orders to ship either March 19 -21, 2014 or March 26 – 28, 2014.  This revised shipping schedule reflects orders pending fulfillment for nearly five months – a far cry of Defendants' promised order fulfillment of 24 – 28 days.  With that being said, as of April 1, 2014, nearly all the fully purchased orders are still outstanding.

76.     As a result, Plaintiffs and Class members are relentlessly trying to obtain refunds from Defendants; however, Defendants refuse to respond and/or issue refunds.  In response to dissatisfied and frustrated customers, Defendants posted the following to Bitcoin Talk on March 7, 2014:

> "Again, we are shipping, we're understaffed…We're not sitting around mining with your rigs, we're just trying to get them out the door as fast as possible [and] using everyone to do so.  Customer service and sales is slipping because of that. We need help from local guys from this forum that will help assemble, right now we're only getting 10-25 units out a day…Delays are due to labor issues and lack of staff."

77.     Per Defendants' above solicitation, local members of the Bitcoin Talk community responded by offering their assistance to assemble the miners.  However, Defendants declined to accept, or even acknowledge, the offers from the community to help build the miners.

78.     Defendants are consistently rude, unprofessional and have threatened members of the Class who have publicized their dissatisfaction with Defendants' failure to deliver the purchased Bitcoin Miners and/or issue refunds.

79.     Upon information and belief, Defendants are not operating a legitimate business.

80.     Plaintiffs and Class members paid Defendants for Bitcoin Miners that they have not received.

Plaintiffs' Class Action Complaint

81.     Defendants have failed to meet the terms and conditions of their sales agreement with Plaintiffs and Class members.

82.     As evidenced by the foregoing, Defendants have no intention of manufacturing or delivering the Bitcoin Miners purchased by the Class, and/or Defendants are using the money paid to them by the Plaintiffs and Class members to manufacture the Bitcoin Miners, but are using them to mine bitcoins for their own benefit.  Once the benefit from the illegitimately used Bitcoin Miners has been conferred to Defendants, Defendants may then, after undue delay, opt to ship the Bitcoin Miners to the Plaintiffs and Class members.

83.     Plaintiffs and Class members are increasingly harmed as more time lapses since the competitive environment of bitcoin mining continues to increase, thus requiring the most innovative bitcoin mining technology.   Consequently, the Defendants' miners that were purchased months ago and not delivered, are now be less effective and less valuable.

## CLASS ALLEGATIONS

84.     Plaintiffs bring this action on behalf of themselves, and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3):

All persons in the United States who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner (the "Nationwide Class").

In the alternative to the Nationwide Class, Plaintiffs seek to represent the following state-specific classes:

All persons in Pennsylvania who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner (the "Pennsylvania Class").

Plaintiffs' Class Action Complaint

All persons in North Carolina who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner (the "North Carolina Class").

All persons in Florida who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner (the "Florida Class").

All persons in Utah who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner (the "Utah Class").

85.    <u>Numerosity</u>:  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe and on that basis allege that there are hundreds of members of the Class who purchased hundreds of AMT Bitcoin Miners.

86.    <u>Ascertainiblity</u>.  Class members can be easily identified from Defendants' website and sales records.

87.    <u>Existence and Predominance of Common Questions of Fact and Law:</u> Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to: whether Defendants' failure to deliver the purchased AMT Bitcoin Miners is a breach of contract;  whether Defendants' failure to timely deliver the purchased AMT Bitcoin Miners is a breach of contract and harmed the Class; whether Defendants' conduct constitutes unlawful business acts and practices; whether, as a result of

Defendants' omissions and/or misrepresentations of material facts related to the AMT Bitcoin Miners, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or value; and, whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies, including rescission, and, if so, the nature of any such relief.

88.   <u>Typicality</u>:  All of Plaintiffs' claims are typical of the claims of the Class since Plaintiff and each member of the Class paid for a AMT Bitcoin Miner and did not receive the AMT Bitcoin Miner or a refund, and/or did not timely receive the AMT Bitcoin Miner. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' failure to deliver the purchased AMT Bitcoin Miners and wrongful conduct alleged herein.  Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class.

89.   <u>Adequacy</u>:  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained competent counsel who is highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.   The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

90.   <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of the Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for

inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' purchase records and the database of complaints.

91. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
### BREACH OF CONTRACT
**(On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)**

92. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

93. Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against all Defendants.

94. A sales agreement exists between Plaintiffs and the Class members, and Defendants. Plaintiffs and the Class performed their obligations under the agreement by paying in full for the purchased AMT Bitcoin Miners.

95. Moreover, Defendants were aware of the time-sensitive nature of the delivery date for the product because of the specialized nature of the bitcoin mining. Defendants made specific assurances to Plaintiffs and the Class members regarding the delivery deadline.

Defendants' failure to deliver the product by its advertised delivery date is a material breach of the agreement.

96.     Plaintiffs and the Class members have been damaged by Defendants' actions and are entitled to be compensated for resulting damages, and are entitled to a refund as per the terms of the agreement.

## COUNT II
## BREACH OF EXPRESS WARRANTY
**(On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)**

97.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

98.     The AMT Bitcoin Miners are goods within the meaning of the Uniform Commercial Code.

99.     Defendants expressly warranted that they would deliver the AMT Bitcoin Miners to Plaintiffs and Class members, and do so in a timely manner.

100.     Defendants did not do so.  This was a material breach of contract that caused damages to Plaintiffs and Class members.

## COUNT III
## COMMON LAW FRAUD
**(On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)**

101.     Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

102.     Defendants made material omissions concerning manufacturing and delivery schedule, and made false statements about issuing refunds.

103.     Defendants willfully failed to state material facts, and/or willfully concealed, suppressed, or omitted such material facts.

104.     Defendants willfully used exaggeration, falsehood, innuendo, and/or ambiguity as to material facts in its written representations.

105.     As a result, Plaintiffs and the Class members were fraudulently induced to purchase the AMT Bitcoin Miners.

106.     These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and the Class members would rely on them.

107.     Plaintiffs and the Class members reasonably relied on these omissions, and suffered damages as a result.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION**
**(On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)**

108.     Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

109.     On information and belief, Defendants supplied false information in order to induce Class members into sales transactions.

110.     On information and belief, Defendants continued to supply false information in order to prevent Class members from seeking a refund of money even though the sales agreement stated that Defendants would issue refunds in the event that "AMT is unable wholly or partially to perform."

111.     On information and belief, Defendants continued to supply false information to protect the Defendants' reputation in the marketplace in order to obtain more sales.

Plaintiffs' Class Action Complaint

112. Plaintiffs and Class members reasonably relied on Defendants' false representations when purchasing AMT Bitcoin Miners.

113. On information and belief, Defendants knew their statements were false when making them and that Class members' reasonable reliance thereon would hinder their ability to productively mine bitcoins.

114. As a result of Defendants' actions, Plaintiffs and the Class members have suffered economic damages including, but not limited to, loss of investment and substantial loss in opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the AMT Bitcoin Miners have decreased.

## COUNT V
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)

115. Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

116. Every contract contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

117. Defendants breached the covenant of good faith and fair dealing by, *inter alia*, supplying false information, failing to deliver the AMT Bitcoin Miners by the advertised delivery dates or within a reasonable timeframe knowing the time-sensitive nature of the bitcoin market, failing to exercise reasonable care or competence in communicating with Plaintiffs and the Class members, and failing to issue refunds.

118.     Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and the Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

<strong><u>COUNT VI</u></strong><br>
<strong><u>UNJUST ENRICHMENT</u></strong><br>
<strong>(On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)</strong>

119.     Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein. This claim is plead in the alternative to the contract based claims.

120.     Plaintiffs and the Class members conferred a benefit on Defendants.  Since mid-2013, the members of the Class have paid Defendants millions of dollars for AMT Bitcoin Miners.

121.     Defendants had knowledge that this benefit was conferred upon them.

122.     However, Defendants have breached their sales agreement by failing to deliver the AMT Bitcoin Miners to the Class, delivering the AMT Bitcoin Miners after undue delay, and/or refusing to issue refunds.  Such breaches of the agreement have caused the Class millions of dollars in damages.

123.     Defendants have been unjustly enriched at the expense of Plaintiffs and the Class members, and their retention of this benefit under the circumstances would be inequitable. Defendants should be required to make restitution.

## COUNT VII
## VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (On Behalf of the Pennsylvania Class)

124.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

125.    The general purpose of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.* ("UTPCPL"), is to protect the public from fraud and unfair or deceptive business practices.  The UTPCPL provides a private right of action for any person who "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" by the UTPCPL.  73 P.S. § 201-9.2(a).

126.    In the course of Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements.

127.    Plaintiffs and members of the class relied upon Defendants' false and misleading representations and omissions.

128.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the Class members have suffered and will continue to suffer actual damages.

129.    Plaintiffs, individually and on behalf of the other Class members, seeks treble damages and an award of attorneys' fees pursuant to 73 P.S. § 201-9.2(a).

## COUNT IX
## VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C. GEN. STAT. § 75-1.1 *ET SEQ*
### (On Behalf of the North Carolina Class)

130.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

131.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"   The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA.  N.C. Gen. Stat. § 75-16.

132.    Defendants' acts and practices complained of herein were performed in the course of its trade or business and thus occurred in or affected commerce.

133.    In the course of Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements.

134.    Plaintiffs and members of the class relied upon Defendants' false and misleading representations and omissions.

135.    Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

136.    Plaintiffs, individually and on behalf of the other Class members, seeks treble damages pursuant to N.C. Gen. Stat. § 75-16, and an award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.

**COUNT X**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT**
**(On Behalf of the Florida Class)**

137.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

138.    The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those

who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202 (2).

139.    Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members material facts about the AMT Bitcoin Miners, and the timing of the delivery thereof.  Defendants should have disclosed this information because they were in a superior position to know these facts, and Plaintiffs and Class members could not reasonably be expected to learn of them until after purchasing the AMT Bitcoin Miners from Defendants.

140.    These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiffs and members of the Class.

### COUNT XI
### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT
**(On Behalf of the Utah Class)**

141.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

142.    The Utah Consumer Sales Practices Act provides a private cause of action for a consumer who has suffered a loss as a result of a violation of the statute.  Utah Code § 13-11-19.

143.    Defendants violated the statute, and did so knowingly and intentionally.

144.    Plaintiffs and Class members have been injured as a result of these violations.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A.      determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.      appoint Plaintiffs as the Class representative and their counsel as Class counsel;

C.      award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and the Class members are entitled;

D.      award pre-judgment and post-judgment interest on such monetary relief;

E.      grant appropriate injunctive and/or declaratory relief, including, without limitation, an order enjoining Defendants from disbursing, transferring or disposing of any assets including the payments received from the Class, requiring them to provide a full accounting with respect to all outstanding orders, and requiring Defendants to, at a minimum, refund Plaintiffs and Class members for their purchases and loss opportunity to mine Bitcoins during the pending delivery timeframe;

F.      award reasonable attorneys' fees and costs; and

G.      grant such further relief that this Court deems appropriate.

<h3 style="text-align:center"><u>JURY DEMAND</u></h3>

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Dated:  April 2, 2014                              Respectfully submitted,

                                        By:  _____
                                             Kimberly Donaldson Smith
                                             Benjamin F. Johns
                                             CHIMICLES & TIKELLIS LLP
                                             One Haverford Centre
                                             361 West Lancaster Avenue
                                             Haverford, PA 19041

Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail:  KMD@chimicles.com
BFJ@chimicles.com

***Proposed Lead Attorneys for Plaintiffs and
the Class***