## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG LENELL, THOMAS URBANEK, and JARED PELA | CIVIL ACTION |
| | 2:14-cv-01924-LDD |
| Plaintiff, | |
| v. | |
| ADVANCED MINING TECHNOLOGY, INC., JOSHUA ZIPKIN, and JIM BROWN | |
| Defendants. | |

## O R D E R

AND NOW, this        day of                2014, upon consideration of Defendants Motion

for Extension of Time to Respond to the Complaint in the above-captioned matter, and any

responses thereto, it is hereby **ORDERED** and **DECREED** that the Motion is **GRANTED**, and

it is,

**FURTHER ORDERED**, that Defendants shall have forty-five (45) days from the date of

this Order to answer, move or otherwise respond to the Plaintiffs' Complaint.  No previous

extension of time has been granted.

_____
                                                                    J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG LENELL,<br>THOMAS URBANEK, and<br>JARED PELA | CIVIL ACTION |
| | 2:14-cv-01924-LDD |
| Plaintiff, | |
| v. | |
| ADVANCED MINING TECHNOLOGY, INC.,<br>JOSHUA ZIPKIN, and<br>JIM BROWN | |
| Defendants. | |

### MOTION FOR AN EXTENSION OF TIME TO RESPOND TO COMPLAINT

Defendants, Advanced Mining Technologies, Inc. (incorrectly identified as Advanced Mining *Technology*, Inc.), Joshua Zipkin and Jim Brown (collectively "Moving Defendants"), by and through their counsel, White and Williams LLP, hereby move this Court for an extension of time within which to answer, move or otherwise respond to the Complaint in accordance with the terms of the proposed Order attached hereto, and in support of their Motion, Moving Defendants aver as follows:

1.      Plaintiffs instituted this class action lawsuit by filing their Complaint against Moving Defendants on or about April 2, 2014. See Compl., Lenell et al. v. Advanced Mining Technology, Inc. et al., No. 14-cv-01924-LDD (E.D.Pa. April 2, 2014), ECF No. 1, attached hereto as Exhibit "A". The claims of the above-captioned named Plaintiffs' allegedly arose from their contracts for the purchase of Bitcoin "Miners" from defendant Advanced Mining Technologies, Inc. ("AMT"). Id. at ¶ 5.

2.      Plaintiffs' Complaint asserts numerous causes of action against Moving Defendants alleging, among other things, breaches of contract and warranty, common law torts, unjust enrichment and violations of various state's consumer protection laws. See id. at ¶¶ 92-

144. Plaintiffs' Complaint further asserts class allegations, in which Plaintiffs declare their intention to seek class certification for a "Nationwide Class" of AMT's United States customers "who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner." See id. at ¶ 84. In the alternative, Plaintiffs' state their intention to seek state-specific classes of such AMT customers from Pennsylvania, North Carolina, Florida and Utah. See id.

3.      As set forth in more detail below, an extension of forty-five (45) days to respond to Plaintiffs' class action Complaint is warranted here when considering: (i) the breadth and extensiveness of the factual and legal allegations pled by Plaintiffs, and (ii) the limited time Moving Defendants had to consult with their recently retained counsel in order to accurately assess and respond to the numerous and complex allegations pled in the Complaint.

4.      On April 10, 2014, service of process was made upon AMT through its registered agent in the State of Delaware where AMT is incorporated and a response to the Complaint would be due by May 1, 2014.[1] See Aff. of Service by Jonathan Sierra (April 10, 2014), ECF No. 6, attached hereto as Exhibit "B".

5.      Subsequently, Moving Defendants contacted White and Williams about defending this lawsuit. On April 28, 2014, the undersigned attorneys entered their appearance on behalf of Moving Defendants for purposes of defending the purported contractual breaches, tortious conduct and state law violations that Plaintiffs' allege arise from the sale of Bitcoin Miners to AMT customers.

6.      Moving Defendants' attorneys also informed Plaintiffs' counsel of their retention as defense counsel in this lawsuit on April 28, 2014 and requested an extension of forty-five (45) days to answer, move or otherwise respond to the Complaint. Attorneys for Moving Defendants

---

[1] Plaintiffs proceeded by attempting service of their Complaint on persons not authorized to accept service of legal process for Moving Defendants. On or about April 9, 2014, service of process was attempted upon Moving Defendant, Joshua Zipkin at two locations: (i) through the care of IMET Corporation, and (ii) through the care of Alan Klovan. See Aff. of Service by Jonathan Sierra (April 9, 2014), ECF No. 4; Aff. of Service by William Inglis (April 9, 2014), ECF No. 5. However, IMET Corporation and Alan Klovan are not persons authorized to accept service of legal process on behalf of any Moving Defendant.

- 2 -

explained that they were making this request due to their recent retention as counsel and recognizing the complexity of the factual averments and legal claims that Plaintiffs pled in their Complaint.

7.     While Plaintiffs' Counsel did not refuse the grant of an extension, they stated that they would need to consider the request and would get back to us. Counsel for Moving Defendants left a voicemail for Plaintiffs' Counsel on April 29, 2014 to follow up on the extension request. However, as of the filing of this motion, Plaintiffs' have not responded to Moving Defendants' request for an extension.

8.     Due to the impending May 1, 2014 deadline to respond to the Complaint, Moving Defendants respectfully ask this Court for an extension of time to respond to the Complaint pursuant to Rule 6 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 6(b).

9.     The extension of time will permit Moving Defendants to make a thorough investigation into the complex factual, legal, and class allegations and will result in a more comprehensive response to Plaintiff's Complaint which will further aid this Court in scheduling discovery and narrowing the issues for trial.

10.     Notably, the 144-paragraph class action Complaint contains a multitude of factual allegations referring to statements and/or transactions purportedly made by Moving Defendants between September 2013 and March 2014, but often without citation to or attachment of the relevant sources. The Complaint also alleges various theories of liability in support Plaintiffs' stated causes of action, which implicate the laws of various states dependant on the circumstances and/or residency of particular Plaintiffs. Further, Plaintiffs' assertion of a putative nationwide class consisting of 100 or more potential class members located across various states makes the necessary factual and legal assessment required for a response more time intensive than a standard non-class lawsuit.

11.     Finally, no prejudice will result from allowing Moving Defendants additional time to respond to Plaintiffs' Complaint because allowing this extension will enable Moving Defendants to better respond to the factual issues raised in the Complaint, and these efforts will streamline the parties' and the Court's efforts during discovery and class certification.

**WHEREFORE**, Moving Defendants, Advanced Mining Technologies, Inc. (incorrectly identified as Advanced Mining *Technology*, Inc.), Joshua Zipkin and Jim Brown, respectfully request that this Honorable Court enter an Order in the form attached hereto extending the time to answer, move or otherwise respond to Plaintiffs' Complaint to forty-five (45) days from the date of the Court's Order.

WHITE AND WILLIAMS LLP


BY:     s/Primitivo J. Cruz
          Michael N. Onufrak
          Primitivo J. Cruz
          1650 Market Street | One Liberty Place,
          Suite 1800 |
          Philadelphia, PA  19103-7395
          Phone: 215.864.7174/6865
          Attorneys for Defendants


Dated:  April 30, 2014

13580368v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG LENELL,<br>THOMAS URBANEK, and<br>JARED PELA | CIVIL ACTION |
|                  Plaintiff, | 2:14-cv-01924-LDD |
|    v. | |
| ADVANCED MINING TECHNOLOGY, INC.,<br>JOSHUA ZIPKIN, and<br>JIM BROWN | |
|                Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOVING DEFENDANTS**
**MOTION FOR EXTENSION OF TIME TO RESPOND TO THE COMPLAINT**

**I.     INTRODUCTION**

Defendants, Advanced Mining Technologies, Inc. (incorrectly identified as Advanced

Mining *Technology*, Inc.), Joshua Zipkin and Jim Brown (collectively "Moving Defendants"), by

and through their counsel, White and Williams LLP, hereby move this Court for an extension of

time within which to answer, move or otherwise respond to the Complaint in the above-

captioned matter. Plaintiffs instituted this class action lawsuit against Moving Defendants by

filing their Complaint on or about April 2, 2014. See Compl., Lenell et al. v. Advanced Mining

Technology, Inc. et al., No. 14-cv-01924-LDD (E.D.Pa. April 2, 2014), ECF No. 1, attached

hereto as Exhibit "A". The claims of the above-captioned named Plaintiffs' allegedly arose from

their contracts for the purchase of Bitcoin "Miners" from defendant Advanced Mining

Technologies, Inc. ("AMT"). Id. at ¶ 5. Plaintiffs' Complaint asserts numerous causes of action

against Moving Defendants alleging, among other things, breaches of contract and warranty,

common law torts, unjust enrichment and violations of various state's consumer protection laws.

See id. at ¶¶ 92-144. Plaintiffs' Complaint further asserts class allegations, in which Plaintiffs

declare their intention to seek class certification for a "Nationwide Class" of AMT's United

States customers "who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner." <u>See id.</u> at ¶ 84. In the alternative, Plaintiffs' state their intention to seek state-specific classes of such AMT customers from Pennsylvania, North Carolina, Florida and Utah. <u>See id.</u>

As set forth in more detail below, Moving Defendants requested extension of forty-five (45) days to respond to Plaintiffs' class action Complaint is warranted here when considering: (i) the breadth and extensiveness of the factual and legal allegations pled by Plaintiffs, and (ii) the limited time Moving Defendants had to consult with their recently retained counsel in order to accurately assess and respond to the numerous and complex allegations pled in the Complaint.

## II.   ARGUMENT

This Court has the discretionary power under Rule 6(b) to grant extensions of time to answer or move with respect to a Complaint.  <u>Orange Theatre Corp. v. Ray Herstz Amusement Corp.</u>, 139 F.2d 871, 872 (3d Cir. 1944), cert. denied, 322 U.S. 740 (1945); <u>Caraballo v. Lykes Brothers Steamship Co.</u>, 212 F. Supp. 216, 221 (E.D. Pa. 1962).  "In accordance with the mandate of Rule 1, that the Rules should be construed 'to secure the just, speedy, and inexpensive determination of every action', the Courts generally have given Rule 6(b) a liberal interpretation in order to work substantial justice." <u>Hoffman v. Kennedy</u>, 30 F.R.D. 50, 52 (E.D. Pa. 1962) (quoting 2 Moore's Federal Practice,  6.08 at 1483).

On April 10, 2014 service of process was made upon Moving Defendant, AMT through its registered agent in the State of Delaware where AMT is incorporated. <u>See</u> Aff. of Service by Jonathan Sierra (April 10, 2014), ECF No. 6, attached hereto as Exhibit "D". Accordingly, Moving Defendants response to the Complaint would be due by May 1, 2014. Subsequently, Moving Defendants contacted White and Williams about defending this lawsuit. On April 28, 2014, the undersigned attorneys entered their appearance to represent Moving Defendants for

13581996v.1

purposes of defending the purported contractual breaches, tortious conduct and state law violations that Plaintiffs' allege arise from the sale of Bitcoin Miners to AMT customers.

Moving Defendants' counsel also informed Plaintiffs' counsel of their retention as defense counsel in this lawsuit on April 28, 2014 and requested an extension of forty-five (45) days to answer, move or otherwise respond to the Complaint. Attorneys for Moving Defendants explained that they were making this request due to their recent retention as counsel and recognizing the complexity of the factual averments and legal claims that Plaintiffs pled in their Complaint. While Plaintiffs' Counsel did not refuse the grant of an extension, they stated that they would need to consider the request and would get back to us. Counsel for Moving Defendants left a voicemail for Plaintiffs' Counsel on April 29, 2014 to follow up on the extension request. However, as of the filing of this motion, Plaintiffs' have not responded to Moving Defendants' request for an extension.

Due to the impending May 1, 2014 deadline to respond to the Complaint, Moving Defendants ask this Court for an extension of time to respond to the Complaint pursuant to Rule 6 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 6(b). The extension of time will permit Moving Defendants to make a thorough investigation into the complex factual, legal, and class allegations and will result in a more comprehensive response to Plaintiff's Complaint which will further aid this Court in scheduling discovery and narrowing the issues for trial.

Notably, the 144-paragraph class action Complaint contains a multitude of factual allegations referring to statements and/or transactions purportedly made by Moving Defendants between September 2013 and March 2014, but often without citation to or attachment of the relevant sources. The Complaint also alleges various theories of liability in support Plaintiffs stated causes of action, which implicate the laws of various states dependant on the circumstances and/or residency of particular Plaintiffs. Further, Plaintiffs' assertion of a putative nationwide class consisting of 100 or more potential class members located across various states

makes the necessary factual and legal assessment required for a response more time intensive than a standard non-class lawsuit. Finally, no prejudice will result from allowing Moving Defendants additional time to respond to Plaintiffs' Complaint because allowing this extension will enable Moving Defendants to better respond to the factual issues raised in the Complaint, and these efforts will streamline the parties' and the Court's efforts during discovery and class certification.

## III.   CONCLUSION

For the foregoing reasons, Moving Defendants ask this Court to exercise its discretion and enter an Order permitting Moving Defendants to respond to the Complaint within forty-five (45) days from the date the Order is entered.

WHITE AND WILLIAMS LLP


BY:   __s/Primitivo J. Cruz_____
         Michael N. Onufrak
         Primitivo J. Cruz
         1650 Market Street | One Liberty Place,
         Suite 1800 |
         Philadelphia, PA  19103-7395
         Phone: 215.864.7174/6865
         Attorneys for Defendants


Dated:  April 30, 2014

13581996v.1

EXHIBIT "A"

Case 2:14-cv-01924   Document 1-1   Filed 04/02/14   Page 1 of 2

JS 44  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| See attached | Advanced Mining Technology, Inc. (a/k/a Advanced Mining Technologies, Inc.); Joshua Zipkin and Jim Brown |

(b)  County of Residence of First Listed Plaintiff   Mecklenburg County, NC
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Montgomery County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

(c)  Attorneys *(Firm Name, Address, and Telephone Number)*
Benjamin F. Johns
Chimicles & Tikellis LLP
361 W. Lancaster Avenue, Haverford, PA  19041  (610) 642-8500

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☒ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      Another District
      *(specify)*

☐ 6  Multidistrict
      Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332

Brief description of cause:
Consumer claims related to defendant's sale of Bitcoin Miners

## VII. REQUESTED IN
## COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
  UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
## IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
04/01/2014

SIGNATURE OF ATTORNEY OF RECORD
*B. Johns*

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

**Plaintiffs**

Craig Lenell
6747 East Douglas Park Drive
Huntersville, NC 28078

Thomas John Urbanek
3528 Jacona Drive
Jacksonville, FL 32277

Jared Pela
610 West 100 South #1
Provo, Utah 84601

Case 2:14-cv-01924   Document 1-2   Filed 04/02/14   Page 1 of 1

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **6747 East Douglas Park Drive, Huntersville, NC  28078**

Address of Defendant: **355 Lancaster Avenue, Bldg. E1, Haverford, PA  19041**

Place of Accident, Incident or Transaction: **Haverford, Pennsylvania**
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐   No☒

Does this case involve multidistrict litigation possibilities?     Yes☐   No☒
*RELATED CASE, IF ANY:*
Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, **Benjamin F. Johns**, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: **4-1-2014**   **Benjamin F. Johns**   **201373**
                          Attorney-at-Law              Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **4-1-2014**   **Benjamin F. Johns**   **201373**
                          Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| CRAIG LENELL; THOMAS URBANEK and<br>JARED PELA, ON BEHALF OF THEMSELVES<br>AND ALL OTHERS SIMILARLY SITUATED<br>*Plaintiff*<br><br>v.<br><br>ADVANCED MINING TECHNOLOGY, INC.<br>a/k/a ADVANCED MINING TECHNOLOGIES,<br>INC.; JOSHUA ZIPKIN and JIM BROWN<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.  14-1924 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

        Advanced Mining Technology, Inc.
        a/k/a Advanced Mining Technologies, Inc.
        355 Lancaster Avenue, Building E1
        Haverford, PA  19041

        A lawsuit has been filed against you.

        Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

BENJAMIN F. JOHNS, ESQ.
361 W. LANCASTER AVE.
HAVERFORD, PA  19041

        If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

                                         *CLERK OF COURT*

Date: 4/2/14

                                   *PATRICIA A. JONES,* Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| CRAIG LENELL, et al. | : | CIVIL ACTION |
| v. | : | |
| ADVANCED MINING TECHNOLOGY, INC., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  (X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( )

| | | |
|---|---|---|
| 4-1-2014 | Benjamin F. Johns | Plaintiffs |
| Date | Attorney-at-law | Attorney for |
| 610-642-8500 | 610-649-3633 | BFJ@Chimicles.com |
| | | |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

Kimberly Donaldson Smith (PA No. 84116)
Benjamin F. Johns (PA No. 201373)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-9633

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PENNSYLVANIA
EASTERN DIVISION**

| | |
|---|---|
| CRAIG LENELL, THOMAS URBANEK, and JARED PELA on behalf of themselves and all others similarly situated,       : <br>          : <br>          : <br> Plaintiffs,       : <br>          : <br> vs.       : <br>          : <br> ADVANCED MINING TECHNOLOGY, INC. (a/k/a ADVANCED MINING TECHNOLOGIES, INC); JOSHUA ZIPKIN; and JIM BROWN,       : <br>          : <br>          : <br> Defendants.       : | Civil Action No. <br><br> <u>CLASS ACTION</u> <br><br><br><br><br> <u>JURY TRIAL DEMANDED</u> |

## <u>COMPLAINT</u>

Plaintiff Craig Lenell, Plaintiff Thomas Urbanek, and Plaintiff Jared Pela (collectively, "Plaintiffs") bring this action individually and on behalf of all other persons similarly situated, by and through their attorneys, against Defendants Advanced Mining Technology, Inc. a/k/a Advanced Mining Technologies, Inc. ("AMT"), and AMT founders, owners and/or employees Joshua Zipkin and Jim Brown (collectively, "Defendants"), and allege the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all

other matters based upon, *inter alia*, the investigation of counsel and public statements issued by AMT.

## INTRODUCTION

1.    This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of persons who purchased "Bitcoin Miners" from Defendants. Defendants hold themselves out to the public and Class as a manufacturer of Bitcoin Miners, which are machines that "mine" bitcoins.

2.    Bitcoin is a type of digital or virtual currency that can be traded for goods and services with third parties who accept them. As of April 2, 2014, the current valuation of a bitcoin was approximately $463.00.[1] The "mining" of bitcoins is a process by which computer hardware is used to obtain bitcoins by processing mathematical calculations. Not only does the mathematics of the bitcoin system become progressively more difficult, but bitcoin mining becomes increasingly more competitive, making the opportunity to profit from bitcoin mining more challenging and more dependent on the quality of the mining equipment.

3.    The Bitcoin Miners sold by Defendants are designed to be used in this process, purportedly to generate bitcoins for users. The Bitcoin Miners sold by Defendants range in price from approximately $1,499 to $14,999. Below is an image of the 1.2TH/s Coin Miner model that is most frequently promoted on Defendants' website and is the most purchased Bitcoin Miner. As of March 30, 2014, Defendants' website homepage, shown below, continued to advertise that the popular 1.2TH/s Coin Miners were available for April delivery.

---

[1] https://bitpay.com/bitcoin-exchange-rates

H0004006.                                    - 2 -

Plaintiffs' Class Action Complaint



4.      Since mid-2013, the members of the Class have paid Defendants millions of dollars for Bitcoin Miners.  However, Defendants have failed to deliver the Bitcoin Miners to the Class, and the handful of Bitcoin Miners that have been reportedly received by bona fide purchasers were delivered following undue delay.  Such failures have caused the Class millions of dollars in damages.

5.      This action arises from Defendants' failure to deliver the purchased mining products within the specified delivery window and/or failure to deliver the purchased mining products altogether to Plaintiffs and the Class.  Additionally, Defendants continue to exhibit an unwillingness to refund customers for the Bitcoin Miner orders that were never received, or compensate Class members who suffered lost opportunity as a result of delayed delivery.

6.      As discussed below, time is of the essence when it comes to the mining of bitcoins.  The longer one waits to begin the process, the more difficult it becomes to acquire new bitcoins.  Accordingly, the Defendants' systematic delays in the delivery of Bitcoin Miners have effectively decreased their value.

7.      Notwithstanding these pervasive delivery problems, Defendants continue to advertise quick turnaround deliveries and accept new orders while failing to fulfill and/or refund existing customer orders.  After a customer places an order, Defendants assure them that the Bitcoin Miner will be delivered within a certain time frame, typically six weeks or less; however,

H0034006.                                    - 3 -

Plaintiffs' Class Action Complaint

Defendants fail to adhere to its communicated delivery schedule.   Therefore, Defendants'
statements are materially and knowingly misleading.

8.     Dissatisfied customers have attempted to communicate with Defendants by
phone, email, and in person to request delivery updates and/or demand refunds, but Defendants
have been unresponsive and ignorantly obstinate that they are purportedly fulfilling orders.

9.     Defendants' improper and illegal business practices extend beyond just their
failure to deliver Bitcoin Miners that have been paid for in full by the Class.  In reaction to
warranted consumer complaints, Defendants have demanded that members of the Class refrain
from posting and warning other potential customers about Defendants' failures, and threatened to
withhold or further delay delivery of products or promised refunds to the members of the Class.
Moreover, all indications are that Defendants' operations are a sham, and, at minimum,
Defendants lack the capability to meet the demand for the orders (and payments) they continue
to accept.

10.     Plaintiffs and the Class were misled about Defendants' business and operations,
and Defendants concealed that they were taking payments from customers but not fulfilling
orders, not refunding customers for failure to deliver the purchased Bitcoin Miners, and lacked
sufficient, if any, operational capacity to fulfill the orders.

11.     As a result of Defendants' unfair, deceptive and fraudulent business practices,
Plaintiffs and the Class have suffered injury in fact, damages, and experienced lost opportunity.
Plaintiffs and Class members never received the Bitcoin Miners they paid for, and were deprived
of the timely use of the Bitcoin Miners to mine bitcoins due to Defendants' failure to adhere to
the avowed delivery schedule.  During the lapsed time the valuation of a bitcoin has fluctuated

Plaintiffs' Class Action Complaint

significantly, and bitcoin mining has become increasingly more competitive and more difficult, thus rendering the purchased Bitcoin Miners devalued and obsolete.

      12.    Accordingly, Plaintiffs bring this action to redress damages to them and the Class due to Defendants' breach of contract, breach of express warranty, common law fraud, negligent misrepresentation, breach of the duty of good faith and fair dealing, unjust enrichment, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, the North Carolina Unfair and Deceptive Trade Practices Act, the Florida Deceptive and Unfair Trade Practices Act, and the Utah Consumer Sales Practices Act.

## PARTIES

### Plaintiff Craig Lenell

      13.    Plaintiff Craig Lenell ("Plaintiff Lenell") is a resident of, and domiciled in, the State of North Carolina.

      14.    On November 11, 2013, Plaintiff Lenell placed an order for a 1.2TH/s Coin Miner (Order #610) and paid in full for the Bitcoin Miner in the amount of $5,959 by wire transfer on December 9, 2013. Defendants' affirmatively stated in email correspondence that the 1.2TH/s Coin Miner would be delivered the "first week of January."

      15.    Then on December 10, 2013, Plaintiff Lenell placed a second order, using his credit card, through Defendants' website for a 80 GH/s Coin Miner (Order #975) totaling $1,705. Despite the payment option information provided on Defendants' website and confirmed through direct correspondence with Defendants, Defendants refused to process the credit card order.

      16.    As of April 1, 2014, Plaintiff Lenell has not received the 1.2TH/s Coin Miner that he ordered and paid for in full on December 9, 2013. As discussed in more detail below,

Plaintiff Lenell has followed up with Defendants numerous times to no avail.  Plaintiff Lenell has been and continues to be damaged by the acts alleged herein.

**Plaintiff Thomas Urbanek**

17.     Plaintiff Thomas Urbanek ("Plaintiff Urbanek") is a resident of, and domiciled in, the State of Florida.

18.     On December 4, 2013, Plaintiff Urbanek placed an order for three (3) 1.2TH/s Coin Miners (Order #870) from Defendants and paid in full for the Bitcoin Miners in the amount of $18,157 using Bitpay, an electronic payment processing system that instantly converts bitcoins into the seller's currency of choice.

19.     Defendants stated that the three 1.2TH/s miners were scheduled for delivery between February 4, 2014 and February 10, 2014.  After unsuccessful attempts to receive a shipment update, Plaintiff Urbanek requested a refund on March 3, 2014.

20.     As of April 1, 2014, Plaintiff Urbanek has not received the three 1.2TH/s Coin Miners that he ordered and paid for in full on December 4, 2013.  As discussed in more detail below, Plaintiff Urbanek has followed up with Defendants numerous times to no avail.  Plaintiff Urbanek has been and continues to be damaged by the acts alleged herein.

**Plaintiff Jared Pela**

21.     Plaintiff Jared Pela ("Plaintiff Pela") is a resident of, and domiciled in, the State of Utah.

22.     On December 13, 2013, Plaintiff Pela placed an order for a 1.2TH/s Coin Miner (Order #1072) from Defendants and paid for in full in the amount of $6,089 using bitcoins via Coinbase, an online bitcoin wallet for sending, receiving, and storing bitcoins.

Plaintiffs' Class Action Complaint

23.     Defendants stated that the 1.2TH/s model was scheduled to ship the first week of February 2014.

24.     As of April 1, 2014, Plaintiff Pela has not received the 1.2TH/s Coin Miner that he ordered and paid for in full on December 13, 2013.  As discussed in more detail below, Plaintiff Pela has followed up with Defendants numerous times to no avail.  Plaintiff Pela has been and continues to be damaged by the acts alleged herein.

**The Defendants**

25.     Defendant Advanced Mining Technology, Inc. (a/k/a Advanced Mining Technologies) ("AMT") holds itself out as a manufacturer of specialized technology equipment used to mine bitcoins. According to AMT, it has been shipping AMT Bitcoin Miners since November 2013.

26.     AMT inconsistently operates under alternating company names, Advanced Mining **Technology**, Inc. and Advanced Mining **Technologies**, Inc. (emphasis added).  AMT's official website, sales agreement, and office building signage all refer to the company as Advanced Mining Technology, Inc.  The Defendants' email signatures list the company name as Advanced Mining Technology.  However, in blog posts and You Tube videos uploaded by Defendants, they refer to AMT as Advanced Mining Technologies, Inc.  Additionally, the Domain Name System (DNS) registrant name for Defendants' website is listed as Advanced Mining Technologies, Inc.

27.     While Defendants have affirmatively claimed on the bitcoin internet forum, Bitcoin Talk (https://bitcointalk.org/index.php?topic=304605.3660), that they are registered in Delaware, that assertion cannot be confirmed or denied due to the Defendants' inconsistent treatment of the company's name.  However, there is a business entity by the name of Advanced

Plaintiffs' Class Action Complaint

Mining Technologies, Inc. that registered in the State of Delaware (File Number: 5341525) on May 29, 2013.

28.    As of December 2013, AMT moved its principal place of business from 1254 West Chester Pike, Havertown, PA 19083 to 355 Lancaster Avenue, Building E1, Haverford, Pennsylvania 19041. According to the signage, the small office space is shared with Madison Mortgage Services, a fictitious entity that registered in Pennsylvania (File Number: 2814954) on May 4, 1998.

29.    The exterior of the two story office building located at 355 Lancaster Avenue, Building E1, Haverford, Pennsylvania 19041 is shown below. The signage on the exterior of the building and on the door of the small first floor office space indicates that AMT shares the office with Madison Mortgage Services.




30.    On information and belief, Defendant Joshua Zipkin ("Zipkin") is a resident of Pennsylvania and is a founder, owner, officer and/or employee of AMT. At all times mentioned herein, Zipkin was acting within the course and scope of his authority as an owner, co-owner,

agent, representative and/or alter ego of their co-defendant, and with the full knowledge, permission and consent of each and every other defendant in committing the acts hereinafter alleged.

31.     On information and belief, Defendant Jim Brown ("Brown") is a resident of Pennsylvania and is a founder, owner, officer and/or employee of AMT. At all times mentioned herein, Brown was acting within the course and scope of his authority as an owner, co-owner, agent, representative and/or alter ego of their co-defendant, and with the full knowledge, permission and consent of each and every other defendant in committing the acts hereinafter alleged.

## JURISDICTION AND VENUE

32.     AMT, Zipkin and Brown are subject to personal jurisdiction in this Court because they reside in this judicial district, AMT's principal place of business is within this district, and all Defendants have engaged in systematic and continuous contacts with this district by virtue of their business activities.

33.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because AMT's principal place of business is in this judicial district, Defendants reside and conduct business in the district, and because a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

34.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.

Plaintiffs' Class Action Complaint

## FACTUAL ALLEGATIONS

### A. The Bitcoin Mining Process.

35.     Bitcoin is a "cryptocurrency", a type of computer-driven virtual currency which has gained momentum since its introduction in 2009.  As a result, the Internal Revenue Service issued a formal notice, IR-2014-36, on March 25, 2014 declaring that bitcoin will be treated as property, not currency, for federal tax purposes.  Unlike traditional currencies, which are issued by central banks, bitcoin has no central monetary authority.  Instead, it is underpinned by a database of valid bitcoins maintained over a peer-to-peer network made up of its users' machines.  The entire network is used to monitor and verify both the creation of new bitcoins through mining, and the transfer of bitcoins between users.

36.     New bitcoins are generated by a competitive and decentralized process called "mining".  Bitcoin mining means, essentially, "generating bitcoins".  Bitcoin Miners are machines that use technology to process transactions, specifically, to solve complex mathematical algorithms, to mine, or generate, a bitcoin.  The bitcoin market is extremely volatile.  As of April 1, 2014 the current valuation of a bitcoin was approximately $463.00.[2]

37.     Bitcoin mining is a very competitive business.  Bitcoins are created at a fixed rate and the total number of bitcoins that can ever be mined is capped at approximately 21 million.  Not only does the mathematics of the bitcoin system become progressively more difficult making bitcoins more difficult to mine, but as more miners join the network it becomes increasingly difficult to make a profit.[3]   For this reason, it is critical that someone looking to profit from bitcoin mining begin the process as soon as possible.

---

[2] https://bitpay.com/bitcoin-exchange-rates
[3] https://bitcoinwisdom.com/bitcoin/difficulty

H0034006.

- 10 -

Plaintiffs' Class Action Complaint

38.     Moreover, ever-increasing computing power is necessary to mine the same amount of bitcoins.  Consequently, prompt acquisition of the latest technology with optimal processing power is critical for miners and so is the timing of the Bitcoin Miner shipments since the computing equipment continually becomes less efficient at processing, thus less valuable over time.

39.     While there is no tangible currency, bitcoins can be bought and sold in return for traditional currency on several exchanges, and can also be directly transferred across the internet from one user to another.   Bitcoins are stored on computers or held by the purchaser or a third party in a so-called virtual wallet.  Once the bitcoins are in the virtual wallet, they can be used to purchase items from any merchant willing to accept them or sell them to someone willing to buy them.

**B.   AMT.**

40.     According to its website, AMT develops SHA-256 coin mining technology for personal and business level mining devices. AMT refers to itself as "a technology manufacturer", "created to provide the average investor with the ability to participate in the new digital currency economy."

41.     AMT also states on its website that AMT "mining technology is built with application-specific integrated circuit (ASIC) 28mn chips in order to provide our clientele with the best mining hardware available on the market."

42.     AMT also touts that it brings its customers, "the ability to participate in the markets of tomorrow, today. We believe that a massive opportunity to profit from coin mining exists for anyone who is equipped with the proper technology. As with any great development opportunity, risk is attached. At AMT, we endeavor to mitigate the risk for our clientele by

Plaintiffs' Class Action Complaint

offering customized hardware with modular options which allow customers to upgrade easily. Let us help you reap rewards through the use of our technological capabilities and extensive cryptocurrency experience."

43.     AMT sells the following Bitcoin Miners: 80 GH/s Coin Miner ($1,499), AMT 128 GHs Bitcoin Miner ($1,599), AMT 180 GHs Bitcoin Miner ($1,899), AMT 220 GH/s Coin Miner ($2,899), 320 GH/s Coin Miner ($3,199), 520 GH/s Coin Miner ($3,999), and 1.2TH/s Coin Miner ($5,599), AMT 2.4Th/s Bitcoin Miner ($9,999), AMT 3.2THs Bitcoin Miner ($14,999)(collectively, the "AMT Bitcoin Miners").

44.     According to AMT, it has been shipping AMT Bitcoin Miners since November 2013 and claims to "design, build, assemble and ship" a line of high speed ASIC miners.

45.     AMT conducts business and accepts orders exclusively through its website (www.advanceminers.com).

46.     AMT's website provides a phone number that is linked to an automated recording that offers three different options: (1) sales, (2) billing and payment, and (3) technical support and all other questions.  All three options initiate the same recording which states that due to high call volumes callers should leave a message that will be returned by a representative within 24 hours.  Plaintiffs and members of the Class have repeatedly called this number, left messages and have not received responses to their inquiries about their orders and/or requests for refunds.

47.     AMT's website claims to accept various methods of payment including PayPal, bitcoin, check, wire transfer, and credit cards (but only for smaller miner purchases).; however, AMT routinely refuses to process credit card purchases.  The two banks that AMT use for wire transfers include Raiffeisen Bank located in Sofia, Bulgaria, and US Bank.

H0034006.                                          - 12 -

Plaintiffs' Class Action Complaint

### C. Plaintiff Lenell's Orders From AMT.

48.     Plaintiff Lenell's order for a 1.2TH/s Coin Miner (Order #610) was placed on November 11, 2013 and paid for in full in the amount of $5,959 by wire transfer on December 9, 2013 to US Bank.  Defendants affirmatively stated in email correspondence that the 1.2TH/s Miner would be delivered the "first week of January."

49.     Then on December 10, 2013, Plaintiff Lenell placed a second order, using his credit card, through Defendants' website for a 80 GH/s Coin Miner (Order #975) totaling $1,705. When Plaintiff Lenell contacted Defendant Brown to confirm his order on December 12, 2013, Defendant Brown responded to Plaintiff Lenell, "Id give up on the CC Craig", and instructed him to pay by either check or wire transfer.

50.     Despite the payment option information provided on Defendants' website and confirmed through direct correspondence with Defendants, Defendants refused to process Plaintiff Lenell's credit card order.  Defendant Zipkin explained in an email dated February 24, 2014 that credit card payments were not yet an option because Defendants were "negotiating commissions and the percentage held of fund and other terms with [their] merchant processor." Plaintiff Lenell was unwilling to purchase the miner using a different form of payment so he forewent the option to buy the 80 GH/s Bitcoin Miner.

51.     Defendants falsely claimed to accept credit card orders in an effort to appear legitimate in the marketplace, but Defendants only accepted payment methods that immediately released non- retractable and non-disputable funds.  Defendants not only told customers directly that credit cards were accepted for smaller orders, but Defendants listed credit cards as a payment method on the website,  allowing customers to submit credit card orders, only to deny

them. If Defendants were unwilling to process credit cards, then the option should not have appeared on the website nor discussed with customers.

52.    When Plaintiff Lenell did not receive the 1.2TH/s Bitcoin Miner by the stated delivery date he proceeded to email Defendants to ask for a shipment status update. Defendants failed to respond to Plaintiff Lenell within a reasonable time which prompted Plaintiff Lenell to post honest, personal accounts about his AMT purchasing experience on Amazon.com and Bitcoin Talk.

53.    Defendants lashed back at Plaintiff Lenell for conveying his experiences on the public forums. In an email from Defendant Zipkin dated February 24, 2014, Defendant Zipkin said that Plaintiff Lenell's conduct was "inappropriate and somewhat childish" as well as "immature and relatively uncalled for." Then Defendant Zipkin went on to demand that Plaintiff Lenell remove the comments, otherwise, "we will not be refunding you or taking any action until you do so."

54.    Plaintiff Lenell removed the reviews in an attempt to induce Defendants to either deliver the two Bitcoin Miners that he purchased or issue him a refund. Defendants failed to take action, so Plaintiff Lenell re-posted the reviews.

55.    In a March 6, 2014 email, nearly three months after Plaintiff Lenell paid for his 1.2TH/s Bitcoin Miner in full, Defendant Zipkin responded, "remove the links and the bad reviews and we'll send you your refund." In response, Plaintiff Lenell informed Defendant Zipkin that he was going to file a complaint with the FTC and Delaware County. This spurred Defendant Zipkin to promptly reply, "Seriously?  Stop screwing around man.  We sent your check out last week!"  Plaintiff Lenell questioned Defendant Zipkin about the contradictory

Plaintiffs' Class Action Complaint

statements concerning the refund in which Defendant Zipkin had AMT's accounting department confirm that a refund was mailed via regular mail on March 4, 2014.

56.   By March 14, 2014, ten days after Defendant Zipkin claimed to have mailed the refund check, Plaintiff Lenell still had not received it.  After much procrastination and circuitous conversation about the unreliable nature of USPS, Defendant Zipkin claimed that they had to cancel the check and send another one or, he alternatively offered to send a 1.2TH/s Bitcoin Miner to Plaintiff Lenell.

57.   Plaintiff Lenell was displeased with Defendants' conduct and informed Defendant Zipkin on March 16, 2014 that he was filing a complaint with the Better Business Bureau.  In retaliation, Defendant Zipkin revoked his prior offer and indicated that "because of [Plaintiff Lenell's] hostility and complaints, we'll just ship you a miner next week."

58.   As of April 1, 2014, sixteen days since the last exchange with Defendants, Plaintiff Lenell has not received either the 1.2TH/s Bitcoin Miner that he paid for in full or a refund.  Plaintiff Lenell has been and continues to be damaged by the acts alleged herein. Plaintiff has suffered injury in fact in the amount of $5,959 as a result of Defendants' unwillingness to deliver the purchased product and/or issue a refund.  Additionally, Plaintiff experienced lost opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased miner has decreased.

D.   **Plaintiff Urbanck's Order From AMT.**

59.   On December 4, 2013, Plaintiff Urbanck placed an order for three (3) 1.2TH/s Coin Miners (Order #870) from Defendants and paid for in full in the amount of $18,157 using Bitpay, an electronic payment processing system that instantly converts bitcoins into the seller's currency of choice.

- 15 -   Plaintiffs' Class Action Complaint

60.    Defendants stated that the three 1.2TH/s Bitcoin Miners were scheduled for delivery between February 4, 2014 and February 10, 2014.  When the miners were not received within the stipulated delivery window, Plaintiff Urbanek attempted to contact Defendants by phone and email, but was unsuccessful.

61.    It was not until February 27, 2014, that Plaintiff Urbanek received a response from Defendants.  The email claimed that "the entire team is in the manufacturing facility day and night – testing, building, adjusting and so on."    The email failed to supply a revised shipment date, but rather informed Plaintiff Urbanek that Defendants would keep him posted on the shipment of his miners as they move down the waiting list.

62.    Recognizing that the prolonged delay in receiving the three Bitcoin Miners continued to decrease the promised return on investment, Plaintiff Urbanek made his first request for a refund on March 3, 2014, one month after the expected delivery date.  Plaintiff Urbanek's for a refund requests went unanswered until Defendant Brown responded on March 26, 2014.  Defendant Brown claimed that Plaintiff Urbanek's Bitcoin Miners were shipping out in the next few days and that Defendant Brown was personally heading "over to the assembly hall now to see if [he could] bump [Plaintiff Urbanek] up sooner."

63.    As of April 1, 2014, Plaintiff Urbanek has not received the three 1.2TH/s Bitcoin Miners that he ordered and paid for in full on December 4, 2013.  Plaintiff Urbanek has been and continues to be damaged by the acts alleged herein.  Plaintiff has suffered injury in fact in the amount of $18,157 as a result of Defendants' unwillingness to deliver the purchased products and/or issue a refund.  Additionally, Plaintiff experienced lost opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased miner has decreased.

Plaintiffs' Class Action Complaint

**E.** **Plaintiff Pela's Order From AMT.**

64.    On December 13, 2013, Plaintiff Pela placed an order (Order #:1072) through Defendants' website for a 1.2TH/s Coin Miner. At that time, Defendants' promotional banner on the website homepage stated, "AMT 1.2 THs Orders Open for First Week of February Delivery". The total cost of the order was $6,089 which Plaintiff Pela paid for using bitcoins via Coinbase, an online bitcoin wallet for sending, receiving, and storing bitcoins. At the time Plaintiff Pela purchased the Bitcoin Miner the valuation of a bitcoin was approximately $889.00.[4]

65.    On December 16, 2013, Plaintiff Pela emailed Defendants to confirm that his order went through successfully. Defendants responded that they would look into the order and confirm if payment was received. Plaintiff Pela did not receive a response so he followed up again on December 18, 2013. Defendant Brown responded that the order was received and notified Plaintiff Pela that he actually overpaid for the miner and would be issued a refund.

66.    On December 24, 2013, Plaintiff Pela emailed Defendant Brown asking for the status of the refund and questioned if he could pick up the miner from Defendants' office. On December 26, 2013, Defendant Brown stated that Defendants were encountering problems with the refund process, but confirmed that Plaintiff Pela could pick up the miner directly from Defendants' office when it was ready.

67.    All communication with Defendants ceased after this correspondence, yet Plaintiff Pela continued to email, call and leave voicemails for Defendants asking for a shipment update. While Defendants refused to respond to Plaintiff concerning his 1.2TH/s Bitcoin Miner, outstanding orders continued to mount; however, Defendants actively accepted new orders,

---

[4] http://www.coindesk.com/price/

- 17 -

Plaintiffs' Class Action Complaint

updated its website homepage announcing miner availability, and committed to impractical shipment dates.

68.     On March 6, 2014, nearly three months after placing the order and a month past the estimated delivery date, Plaintiff Pela emailed Defendants to request a refund for his miner order. Once again, Plaintiff Pela never received a response.

69.     As of April 2, 2014, Defendants' website homepage, shown in the image below, stated, "AMT 1.2 THs Orders Open April Delivery Still Available." This is the same model purchased by Plaintiff that he is yet to receive. Meanwhile, Defendants continue to falsely advertise and accept orders for this model when they have not yet fulfilled the orders dating back over three months.



70.     As of April 1, 2014, Plaintiff Pela has not received the 1.2TH/s Bitcoin Miner that he ordered and paid for in full on December 13, 2013. Plaintiff Pela has suffered injury in fact in the amount of $6,089 as a result of Defendants' unwillingness to deliver the purchased product and/or issue a refund. Additionally, Plaintiff Pela is increasingly harmed as more time lapses since the competitive environment of bitcoin mining continues to increase. As a result, Plaintiff Pela has experienced lost opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased model has decreased.

F. **Defendants' Failure to Deliver Purchased Bitcoin Miners and/or Rightfully Issue Refunds.**

71.     Like many members of the bitcoin community, Plaintiffs were participants in the internet message board and community known as Bitcoin Talk (https://bitcointalk.org/index.php?topic=304605.3660). Bitcoin Talk, along with other websites, is replete with examples from members of the bitcoin community that have encountered the same order fulfillment issues and/or denial of refund by AMT.

72.     Defendants were not only an active participant in this community, but initiated the official "AMT" Bitcoin Talk thread on September 29, 2013, only 19 days after registering its website.[5]

73.     Defendants engaged in a wide range of promotion, all of which can now be discredited, via Bitcoin Talk, including (1) inviting members to visit their office, (2) announcing partnerships and expansions, (3) guaranteeing shipment within four weeks from the date of purchase or a full refund[6], and (4) claiming customers could buy Bitcoin Miners using credit cards.

74.     Most importantly, Defendants publicly committed to various and specific shipment schedules.  On October 29, 2013, Defendants announced that they would "start shipping mid-September orders on Monday the 4th" of November 2013.  For customers that ordered at the end September/early October, "miners will ship from the 4th – 8th" of November 2013. Mid-October orders "will ship by the 11th –14th" of November 2013.  Defendants stated that the revised purchase – shipment turnaround time was "24 – 28 days."

75.     Defendants then publicly revised the scheduled shipment dates on  February 21, 2014 as follows:  October – early November 2013 orders to ship February 24 – 26, 2014; mid-

---

[5] AMT's introductory Bitcoin Talk post, dated September 29, 2013, was revised on February 1, 2014.
[6] Comment posted by AMT on October 2, 2013.

Plaintiffs' Class Action Complaint

November 2013 orders to ship February 26 – 28, 2014; end of November 2013 orders to ship March 3 – 5, 2014; early December 2013 orders to ship March 5 –7, 2014; mid-December 2013 orders to ship March 10 – 14, 2014; end of December 2013 orders to ship March 17 –19, 2014; and January 2014 orders to ship either March 19 –21, 2014 or March 26 – 28, 2014. This revised shipping schedule reflects orders pending fulfillment for nearly five months – a far cry of Defendants' promised order fulfillment of 24 – 28 days. With that being said, as of April 1, 2014, nearly all the fully purchased orders are still outstanding.

76.    As a result, Plaintiffs and Class members are relentlessly trying to obtain refunds from Defendants; however, Defendants refuse to respond and/or issue refunds. In response to dissatisfied and frustrated customers, Defendants posted the following to Bitcoin Talk on March 7, 2014:

> "Again, we are shipping, we're understaffed…We're not sitting around mining with your rigs, we're just trying to get them out the door as fast as possible [and] using everyone to do so. Customer service and sales is slipping because of that. We need help from local guys from this forum that will help assemble, right now we're only getting 10-25 units out a day…Delays are due to labor issues and lack of staff."

77.    Per Defendants' above solicitation, local members of the Bitcoin Talk community responded by offering their assistance to assemble the miners. However, Defendants declined to accept, or even acknowledge, the offers from the community to help build the miners.

78.    Defendants are consistently rude, unprofessional and have threatened members of the Class who have publicized their dissatisfaction with Defendants' failure to deliver the purchased Bitcoin Miners and/or issue refunds.

79.    Upon information and belief, Defendants are not operating a legitimate business.

80.    Plaintiffs and Class members paid Defendants for Bitcoin Miners that they have not received.

81.     Defendants have failed to meet the terms and conditions of their sales agreement with Plaintiffs and Class members.

82.     As evidenced by the foregoing, Defendants have no intention of manufacturing or delivering the Bitcoin Miners purchased by the Class, and/or Defendants are using the money paid to them by the Plaintiffs and Class members to manufacture the Bitcoin Miners, but are using them to mine bitcoins for their own benefit. Once the benefit from the illegitimately used Bitcoin Miners has been conferred to Defendants, Defendants may then, after undue delay, opt to ship the Bitcoin Miners to the Plaintiffs and Class members.

83.     Plaintiffs and Class members are increasingly harmed as more time lapses since the competitive environment of bitcoin mining continues to increase, thus requiring the most innovative bitcoin mining technology.   Consequently, the Defendants' miners that were purchased months ago and not delivered, are now be less effective and less valuable.

## **CLASS ALLEGATIONS**

84.     Plaintiffs bring this action on behalf of themselves, and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3):

All persons in the United States who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner (the "Nationwide Class").

In the alternative to the Nationwide Class, Plaintiffs seek to represent the following state-specific classes:

All persons in Pennsylvania who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner (the "Pennsylvania Class").

                                                        Plaintiffs' Class Action Complaint

All persons in North Carolina who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner (the "North Carolina Class").

All persons in Florida who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner (the "Florida Class").

All persons in Utah who purchased AMT Bitcoin Miners and never received or untimely received the AMT Bitcoin Miner (the "Utah Class").

85.     Numerosity:  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe and on that basis allege that there are hundreds of members of the Class who purchased hundreds of AMT Bitcoin Miners.

86.     Ascertainiblity.  Class members can be easily identified from Defendants' website and sales records.

87.     Existence and Predominance of Common Questions of Fact and Law:  Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to: whether Defendants' failure to deliver the purchased AMT Bitcoin Miners is a breach of contract;  whether Defendants' failure to timely deliver the purchased AMT Bitcoin Miners is a breach of contract and harmed the Class; whether Defendants' conduct constitutes unlawful business acts and practices; whether, as a result of

- 22 -

Plaintiffs' Class Action Complaint

Defendants' omissions and/or misrepresentations of material facts related to the AMT Bitcoin Miners, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or value; and, whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies, including rescission, and, if so, the nature of any such relief.

88.     Typicality:  All of Plaintiffs' claims are typical of the claims of the Class since Plaintiff and each member of the Class paid for a AMT Bitcoin Miner and did not receive the AMT Bitcoin Miner or a refund, and/or did not timely receive the AMT Bitcoin Miner. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' failure to deliver the purchased AMT Bitcoin Miners and wrongful conduct alleged herein.  Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class.

89.     Adequacy:  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained competent counsel who is highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

90.     Superiority:  A class action is superior to all other available means of fair and efficient adjudication of the claims of the Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for

                                                    Plaintiffs' Class Action Complaint

inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' purchase records and the database of complaints.

91.      Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
### BREACH OF CONTRACT
**(On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)**

92.      Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

93.      Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against all Defendants.

94.      A sales agreement exists between Plaintiffs and the Class members, and Defendants. Plaintiffs and the Class performed their obligations under the agreement by paying in full for the purchased AMT Bitcoin Miners.

95.      Moreover, Defendants were aware of the time-sensitive nature of the delivery date for the product because of the specialized nature of the bitcoin mining. Defendants made specific assurances to Plaintiffs and the Class members regarding the delivery deadline.

Plaintiffs' Class Action Complaint

Defendants' failure to deliver the product by its advertised delivery date is a material breach of the agreement.

96.     Plaintiffs and the Class members have been damaged by Defendants' actions and are entitled to be compensated for resulting damages, and are entitled to a refund as per the terms of the agreement.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)

97.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

98.     The AMT Bitcoin Miners are goods within the meaning of the Uniform Commercial Code.

99.     Defendants expressly warranted that they would deliver the AMT Bitcoin Miners to Plaintiffs and Class members, and do so in a timely manner.

100.    Defendants did not do so. This was a material breach of contract that caused damages to Plaintiffs and Class members.

## COUNT III
## COMMON LAW FRAUD
### (On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)

101.    Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

102.    Defendants made material omissions concerning manufacturing and delivery schedule, and made false statements about issuing refunds.

Plaintiffs' Class Action Complaint

103.    Defendants willfully failed to state material facts, and/or willfully concealed, suppressed, or omitted such material facts.

104.    Defendants willfully used exaggeration, falsehood, innuendo, and/or ambiguity as to material facts in its written representations.

105.    As a result, Plaintiffs and the Class members were fraudulently induced to purchase the AMT Bitcoin Miners.

106.    These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and the Class members would rely on them.

107.    Plaintiffs and the Class members reasonably relied on these omissions, and suffered damages as a result.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
### (On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)

108.    Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

109.    On information and belief, Defendants supplied false information in order to induce Class members into sales transactions.

110.    On information and belief, Defendants continued to supply false information in order to prevent Class members from seeking a refund of money even though the sales agreement stated that Defendants would issue refunds in the event that "AMT is unable wholly or partially to perform."

111.    On information and belief, Defendants continued to supply false information to protect the Defendants' reputation in the marketplace in order to obtain more sales.

Plaintiffs' Class Action Complaint

112.   Plaintiffs and Class members reasonably relied on Defendants' false representations when purchasing AMT Bitcoin Miners.

113.   On information and belief, Defendants knew their statements were false when making them and that Class members' reasonable reliance thereon would hinder their ability to productively mine bitcoins.

114.   As a result of Defendants' actions, Plaintiffs and the Class members have suffered economic damages including, but not limited to, loss of investment and substantial loss in opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the AMT Bitcoin Miners have decreased.

## COUNT V
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
**(On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)**

115.   Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

116.   Every contract contains an implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

117.   Defendants breached the covenant of good faith and fair dealing by, *inter alia*, supplying false information, failing to deliver the AMT Bitcoin Miners by the advertised delivery dates or within a reasonable timeframe knowing the time-sensitive nature of the bitcoin market, failing to exercise reasonable care or competence in communicating with Plaintiffs and the Class members, and failing to issue refunds.

Plaintiffs' Class Action Complaint

118.   Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and the Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT VI
## UNJUST ENRICHMENT
### (On behalf of the Nationwide Class, or Alternatively the Pennsylvania, North Carolina, Florida, and Utah Classes)

119.   Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein. This claim is plead in the alternative to the contract based claims.

120.   Plaintiffs and the Class members conferred a benefit on Defendants. Since mid-2013, the members of the Class have paid Defendants millions of dollars for AMT Bitcoin Miners.

121.   Defendants had knowledge that this benefit was conferred upon them.

122.   However, Defendants have breached their sales agreement by failing to deliver the AMT Bitcoin Miners to the Class, delivering the AMT Bitcoin Miners after undue delay, and/or refusing to issue refunds. Such breaches of the agreement have caused the Class millions of dollars in damages.

123.   Defendants have been unjustly enriched at the expense of Plaintiffs and the Class members, and their retention of this benefit under the circumstances would be inequitable. Defendants should be required to make restitution.

Plaintiffs' Class Action Complaint

### COUNT VII
### VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
#### (On Behalf of the Pennsylvania Class)

124.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

125.    The general purpose of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.* ("UTPCPL"), is to protect the public from fraud and unfair or deceptive business practices. The UTPCPL provides a private right of action for any person who "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" by the UTPCPL. 73 P.S. § 201-9.2(a).

126.    In the course of Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements.

127.    Plaintiffs and members of the class relied upon Defendants' false and misleading representations and omissions.

128.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the Class members have suffered and will continue to suffer actual damages.

129.    Plaintiffs, individually and on behalf of the other Class members, seeks treble damages and an award of attorneys' fees pursuant to 73 P.S. § 201-9.2(a).

### COUNT IX
### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C. GEN. STAT. § 75-1.1 *ET SEQ*
#### (On Behalf of the North Carolina Class)

130.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

Plaintiffs' Class Action Complaint

131.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

132.    Defendants' acts and practices complained of herein were performed in the course of its trade or business and thus occurred in or affected commerce.

133.    In the course of Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements.

134.    Plaintiffs and members of the class relied upon Defendants' false and misleading representations and omissions.

135.    Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

136.    Plaintiffs, individually and on behalf of the other Class members, seeks treble damages pursuant to N.C. Gen. Stat. § 75-16, and an award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.

## COUNT X
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (On Behalf of the Florida Class)

137.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

138.    The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those

who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202 (2).

139.    Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members material facts about the AMT Bitcoin Miners, and the timing of the delivery thereof. Defendants should have disclosed this information because they were in a superior position to know these facts, and Plaintiffs and Class members could not reasonably be expected to learn of them until after purchasing the AMT Bitcoin Miners from Defendants.

140.    These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiffs and members of the Class.

### COUNT XI
### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT
#### (On Behalf of the Utah Class)

141.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

142.    The Utah Consumer Sales Practices Act provides a private cause of action for a consumer who has suffered a loss as a result of a violation of the statute. Utah Code § 13-11-19.

143.    Defendants violated the statute, and did so knowingly and intentionally.

144.    Plaintiffs and Class members have been injured as a result of these violations.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A.     determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.     appoint Plaintiffs as the Class representative and their counsel as Class counsel;

C.     award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and the Class members are entitled;

D.     award pre-judgment and post-judgment interest on such monetary relief;

E.     grant appropriate injunctive and/or declaratory relief, including, without limitation, an order enjoining Defendants from disbursing, transferring or disposing of any assets including the payments received from the Class, requiring them to provide a full accounting with respect to all outstanding orders, and requiring Defendants to, at a minimum, refund Plaintiffs and Class members for their purchases and loss opportunity to mine Bitcoins during the pending delivery timeframe;

F.     award reasonable attorneys' fees and costs; and

G.     grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Dated: April 2, 2014                                   Respectfully submitted,

                                                        By:  _Kimberly Donaldson Smith_____

                                                        Kimberly Donaldson Smith
                                                        Benjamin F. Johns
                                                        CHIMICLES & TIKELLIS LLP
                                                        One Haverford Centre
                                                        361 West Lancaster Avenue
                                                        Haverford, PA 19041

                                                        Plaintiffs' Class Action Complaint

Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail:  KMD@chimicles.com
BFJ@chimicles.com

*Proposed Lead Attorneys for Plaintiffs and the Class*

Plaintiffs' Class Action Complaint

# EXHIBIT "B"

**AFFIDAVIT OF SERVICE**



| Case:<br>2:14-CV-<br>01924 | Court:<br>UNITED STATES DISTRICT COURT FOR THE EASTERN<br>DISTRICT OF PENNSYLVANIA | County:<br>, | Job:<br>328466 (617254) |
|---|---|---|---|
| Plaintiff / Petitioner:<br>CRAIG LENELL, THOMAS URBANEK, JARED PELA, ON BEHALF OF<br>THEMSELVES AND ALL OTHERS SIMILARLY SITUATED | | Defendant / Respondent:<br>ADVANCED MINING TECHNOLOGY, INC., A/K/A ADVANCED MINING<br>TECHNOLOGIES, INC., JOSHUA ZIPKIN AND JIM BROWN | |
| Received by:<br>Heaven Sent Legal Services | | For:<br>Chimicles & Tikellis | |
| To be served upon:<br>ADVANCED MINING TECHNOLOGY, INC c/o REGISTERED AGENT, BUSINESS FILING, INC | | | |

I, Jonathan Sierra, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   ADVANCED MINING TECHNOLOGY, INC c/o REGISTERED AGEENT, BUSINESS FILING, INC C/O AMY MCLAREN,
                            Company: 108 W 13TH ST, WILMINGTON, DE 19801

Manner of Service:   Registered Agent, Apr 10, 2014, 9:47 am

Documents:   REPRESENTATION LETTER, SUMMONS IN A CIVIL ACTION, CIVIL COVER LETTER, DESIGNATION FORM, CASE
             MANAGEMENT TRACK DESIGNATION FORM, JURY TRIAL DEMANDED, COMPLAINT, COUNTI-XI (Received Apr 16,
             2014 at 3:40pm)

Additional Comments:
1) Successful Attempt: Apr 10, 2014, 9:47 am at Company: 108 W 13TH ST, WILMINGTON, DE 19801 received by ADVANCED MINING
TECHNOLOGY, INC c/o REGISTERED AGEENT, BUSINESS FILING, INC C/O AMY MCLAREN. Age: 35; Ethnicity: Caucasian; Gender: Female;
Weight: 180; Height: 5'5"; Hair: Black; Eyes: Brown;

_Jonathon Sierra_                    04-10-2014
Jonathan Sierra                      Date

Heaven Sent Legal Services
421 N 7th St Suite 422
Philadelphia, Pa 19123
(866) 331-4220

Subscribed and sworn to before me by the affiant who is
personally known to me.

_signature_
Notary Public
4/11/2014        October 10, 2017
Date             Commission Expires

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JONATHON R. SANDLER, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 10, 2017

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG LENELL, THOMAS URBANEK, and JARED PELA | CIVIL ACTION |
| Plaintiffs, | 2:14-cv-01924-LDD |
| v. | |
| ADVANCED MINING TECHNOLOGY, INC., JOSHUA ZIPKIN, and JIM BROWN | |
| Defendants. | |

## <u>CERTIFICATE OF SERVICE</u>

I, Primitivo J. Cruz, Esquire, hereby certify that I have served a copy of the foregoing

Motion For Extension of Time to Respond to Complaint via electronic filing and/or first class

mail on this 30th day of April, 2014.

Kimberly Donaldson Smith, Esquire
Benjamin F. Johns, Esquire
Chimicles & Tikellis LLP
361 West Lancaster Avenue
Haverford, PA 19041

**WHITE AND WILLIAMS LLP**

   s/Primitivo J. Cruz
Michael N. Onufrak
Primitivo J. Cruz
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
215.864.7174/6865
Attorney for Defendants

13583374v.1