Kimberly Donaldson Smith (PA No. 84116)
Benjamin F. Johns (PA No. 201373)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone:  (610) 642-8500
Facsimile: (610) 649-3633

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRAIG LENELL, THOMAS URBANEK, JARED PELA, TIMOTHY CHRISTIAN, JOHN LEWIS, and PHILLIP WILTSHIRE on behalf of themselves and all others similarly situated, | : : : : : | Civil Action No. 2:14-cv-01924-LDD <br><br> <u>CLASS ACTION</u> |
| Plaintiffs, | : : | |
| vs. | : : : | |
| ADVANCED MINING TECHNOLOGY, INC. (a/k/a ADVANCED MINING TECHNOLOGIES, INC.); JOSHUA ZIPKIN; and JIM BROWN, | : : : : : | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | : : | |

**<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

Plaintiff Craig Lenell, Plaintiff Thomas Urbanek, Plaintiff Jared Pela, Plaintiff Timothy

Christian, Plaintiff John Lewis, and Plaintiff Phillip Wiltshire (collectively, "Plaintiffs") bring

this action individually and on behalf of all other persons similarly situated, by and through their

attorneys, against Defendants Advanced Mining Technology, Inc. a/k/a Advanced Mining

Technologies, Inc. ("AMT"), and AMT founders, owners and/or employees  Joshua Zipkin and

Jim Brown (collectively, "Defendants"), and allege the following based upon personal

knowledge as to themselves and their own acts, and information and belief as to all other matters based upon, *inter alia*, the investigation of counsel and public statements issued by AMT.

## INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of persons who purchased "Bitcoin Miners" from Defendants.  Defendants hold themselves out to the public and Class as a manufacturer of Bitcoin Miners, which are machines that "mine" bitcoins.  However, the reality is that Defendants have perpetuated, and continue to, a scheme of misleading and defrauding consumers into giving them money for Bitcoin Miners that Defendants knew: would not be delivered as ordered; would not be delivered on-time; and would be utterly inoperable.

2.      Bitcoin is a type of digital or virtual currency that can be traded for goods and services with third parties who accept them.  As of June 25, 2014, the current valuation of a bitcoin was approximately $561.13.[1]  The "mining" of bitcoins is a process by which computer hardware is used to obtain bitcoins by processing mathematical calculations.  Not only does the mathematics of the bitcoin system become progressively more difficult, but bitcoin mining becomes increasingly more competitive, making the opportunity to profit from bitcoin mining more challenging and more dependent on the quality of the mining equipment.

3.      The Bitcoin Miners sold by Defendants are designed to be used in this process, purportedly to generate bitcoins for users.  Upon information and belief, Defendants sell the miners to consumers in the United States and abroad. The Bitcoin Miners sold by Defendants range in price from approximately $1,499 to $14,999.  Below is an image of the 1.2TH/s Coin Miner model that is most frequently promoted on Defendants' website and is the most purchased

---

[1] *See* https://bitpay.com/bitcoin-exchange-rates (last visited June 25, 2014).

Bitcoin Miner.  As of March 30, 2014, Defendants' website homepage, shown below, continued to advertise that the popular 1.2TH/s Coin Miners were available for April 2014 delivery.





4.     Since mid-2013, the members of the Class have paid Defendants millions of dollars for Bitcoin Miners.  Defendants have failed to deliver the Miners to the substantial majority of the members of the Class and the handful of Miners that have been reportedly received by bona fide purchasers were delivered only following undue delay and many do not perform as advertised by Defendants and are utterly useless and defective.  In addition, having already expended thousands of dollars per machine, for members of the Class to secure replacement Miners from Defendants or other Bitcoin miner providers would require them to expend thousands of dollars.  Furthermore, the members of the Class, under AMT's Miner Protection Plan, *discussed infra,* are guaranteed, *inter alia*, "enough hashing power to meet ROI [return on investment] and then some, when mining SHA-256 coin. If the networks increases [sic] to a point where your investment in our technology is no longer profitable, AMT will upgrade your miner to the next level Miner absolutely free."  Accordingly, Defendants have not only failed to deliver the purchased Bitcoin Miners to the members of the Class, but have failed to, as promised, give them their return on investment.  Such failures have caused the Class millions of dollars in damages.

H0037264.

- 3 -

5.     This action arises from Defendants' failure to deliver the purchased mining products within the specified delivery window, failure to deliver the purchased mining products altogether to Plaintiffs and the Class, and/or failure to deliver Bitcoin Miners that perform as advertised by Defendants.   Additionally, Defendants continue to exhibit an unwillingness to refund customers for the Bitcoin Miner orders that were never received, compensate Class members who suffered lost opportunity as a result of delayed delivery, or refund or repair Bitcoin Miners that were delivered and did not perform as advertised by Defendants.

6.     As discussed below, time is of the essence when it comes to the mining of bitcoins.  The longer one waits to begin the process, the more difficult it becomes to acquire new bitcoins.  Accordingly, the Defendants' systematic delays in the delivery of Bitcoin Miners have effectively decreased their value.

7.     Notwithstanding these pervasive delivery and performance problems, Defendants continue to advertise quick turnaround deliveries and accept new orders while failing to fulfill or refund existing customer orders, or make the necessary repairs to underperforming and nonperforming Bitcoin Miners.  After a customer places an order, Defendants assure them that the Bitcoin Miner will be delivered within a certain time frame, typically six weeks or less; however, Defendants fail to adhere to its communicated delivery schedule.   Therefore, Defendants' statements are materially and knowingly misleading.

8.     Dissatisfied customers have attempted to communicate with Defendants by phone, email, and in person to request delivery updates and/or demand refunds, but Defendants have been unresponsive and ignorantly obstinate that they are purportedly fulfilling orders.

9.     Defendants' improper and illegal business practices extend beyond just their failure to deliver Bitcoin Miners that have been paid for in full by the Class.  In reaction to

warranted consumer complaints, Defendants have demanded that members of the Class refrain from posting and warning other potential customers about Defendants' failures, and threatened to withhold or further delay delivery of products or promised refunds to the members of the Class. Moreover, all indications are that Defendants' operations are a sham, and, at minimum, Defendants lack the capability to meet the demand for the orders (and payments) they continue to accept.

10.    Plaintiffs and the Class were misled about Defendants' business and operations, and Defendants concealed that they were taking payments from customers but not fulfilling orders, not refunding customers for failure to deliver the purchased Bitcoin Miners, and lacked sufficient, if any, operational capacity to fulfill the orders.

11.    As a result of Defendants' unfair, deceptive and fraudulent business practices, Plaintiffs and the Class have suffered injury in fact, damages, and experienced lost opportunity. Plaintiffs and Class members never received the Bitcoin Miners they paid for, were deprived of the timely use of the Bitcoin Miners to mine bitcoins due to Defendants' failure to adhere to the avowed delivery schedule, and for the few Class members who received Bitcoin Miners, the miners do not perform as advertised or are completely non-functional.  During the lapsed time the valuation of a bitcoin has fluctuated significantly, and bitcoin mining has become increasingly more competitive and more difficult, thus rendering the purchased Bitcoin Miners devalued and obsolete.  Furthermore, Plaintiffs and the Class have been unable to mine bitcoins while they wait for Defendants to deliver their Bitcoin Miners, and suffer aggregate losses of thousands or tens of thousands of dollars per day, if not more.

12.    Accordingly, Plaintiffs bring this action to redress damages to them and the Class due to Defendants' breach of contract, breach of express warranty, common law fraud, negligent

Plaintiffs' First Amended Complaint

misrepresentation, breach of the duty of good faith and fair dealing, unjust enrichment, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, the North Carolina Unfair and Deceptive Trade Practices Act, the Florida Deceptive and Unfair Trade Practices Act, the Utah Consumer Sales Practices Act, the California Consumer Legal Remedies Act, the California Unfair Competition Law, the Oregon Unlawful Trade Practices Law and the Illinois Consumer Fraud and Deceptive Trade Practices Act.

## PARTIES

**Plaintiff Craig Lenell**

13.     Plaintiff Craig Lenell ("Plaintiff Lenell") is a consumer who is a resident of, and domiciled in, the State of North Carolina. Lenell purchased his miners for his own personal use.

14.     On November 11, 2013, Plaintiff Lenell placed an order for a 1.2TH/s Coin Miner (Order #610) and paid in full for the Bitcoin Miner in the amount of $5,959 by wire transfer on December 9, 2013.  Defendants' affirmatively stated in email correspondence that the 1.2TH/s Coin Miner would be delivered the "first week of January."

15.     Then on December 10, 2013, Plaintiff Lenell placed a second order, using his credit card, through Defendants' website for a 80 GH/s Coin Miner (Order #975) totaling $1,705. Despite the payment option information provided on Defendants' website and confirmed through direct correspondence with Defendants, Defendants refused to process the credit card order.

16.     As of June 25, 2014, Plaintiff Lenell has not received the 1.2TH/s Coin Miner that he ordered and paid for in full on December 9, 2013.  As discussed in more detail below, Plaintiff Lenell has followed up with Defendants numerous times to no avail.  Plaintiff Lenell has been and continues to be damaged by the acts alleged herein.

Plaintiffs' First Amended Complaint

**Plaintiff Thomas Urbanek**

17.     Plaintiff Thomas Urbanek ("Plaintiff Urbanek") is a consumer who is a resident of, and domiciled in, the State of Florida. Urbanek purchased his miners for his own personal use.

18.     On December 4, 2013, Plaintiff Urbanek placed an order for three (3) 1.2TH/s Coin Miners (Order #870) from Defendants and paid in full for the Bitcoin Miners in the amount of $18,157 using Bitpay, an electronic payment processing system that instantly converts bitcoins into the seller's currency of choice.

19.     Defendants stated that the three 1.2TH/s miners were scheduled for delivery between February 4, 2014 and February 10, 2014.  After unsuccessful attempts to receive a shipment update, Plaintiff Urbanek requested a refund on March 3, 2014.

20.     As of June 25, 2014, Plaintiff Urbanek has not received the three 1.2TH/s Coin Miners that he ordered and paid for in full on December 4, 2013.  As discussed in more detail below, Plaintiff Urbanek has followed up with Defendants numerous times to no avail.  Plaintiff Urbanek has been and continues to be damaged by the acts alleged herein.

**Plaintiff Jared Pela**

21.     Plaintiff Jared Pela ("Plaintiff Pela") is a consumer who is a resident of, and domiciled in, the State of Utah. Pela purchased his miner for his own personal use.

22.     On December 13, 2013, Plaintiff Pela placed an order for a 1.2TH/s Coin Miner (Order #1072) from Defendants and paid for in full in the amount of $6,089 using bitcoins via Coinbase, an online bitcoin wallet for sending, receiving, and storing bitcoins.

23.     Defendants stated that the 1.2TH/s model was scheduled to ship the first week of February 2014.

24.     As of June 25, 2014, Plaintiff Pela has not received the 1.2TH/s Coin Miner that he ordered and paid for in full on December 13, 2013.   As discussed in more detail below, Plaintiff Pela has followed up with Defendants numerous times to no avail.   Plaintiff Pela has been and continues to be damaged by the acts alleged herein.

**Plaintiff Timothy Christian**

25.     Plaintiff Timothy Christian ("Plaintiff Christian") is a consumer who is a resident of, and domiciled in, the State of Oregon. Plaintiff Christian purchased his Coin Miner for his own personal use.

26.     On October 29, 2013, Plaintiff Christian placed an order for a 1.2TH/s Coin Miner (Order #550) from Defendants and paid for in full in the amount of $5,399 through a wire transfer.

27.     Defendants stated that the 1.2TH/s model was scheduled to ship the week of December 23, 2013.

28.     As of June 25, 2014, Plaintiff Christian has not received the 1.2TH/s Coin Miner that he ordered and paid for in full on October 29, 2013.   As discussed in more detail below, Plaintiff Christian has followed up with Defendants numerous times to no avail.   Plaintiff Christian has been and continues to be damaged by the acts alleged herein.

**Plaintiff John Lewis**

29.     Plaintiff John Lewis ("Plaintiff Lewis") is a consumer who is a resident of, and domiciled in, the State of California.  Plaintiff Lewis purchased his Coin Miner for his own personal use.

30.     On January 2, 2014, Plaintiff Lewis placed an order for a 1.2TH/s Coin Miner (Order #1243) from Defendants and paid for in full in the amount of $6,159 by mailing a cashier's check.

31.     Defendants stated that the 1.2TH/s model was scheduled to ship the week of February 25, 2014.

32.     As of June 25, 2014, Plaintiff Lewis has not received the 1.2TH/s Coin Miner that he ordered and sent a cashier's check for on January 2, 2014.  As discussed in more detail below, Plaintiff Lewis has followed up with Defendants numerous times to no avail.  Plaintiff Lewis has been and continues to be damaged by the acts alleged herein.

**Plaintiff Phillip Wiltshire**

33.     Plaintiff Phillip Wiltshire ("Plaintiff Wiltshire") is a consumer who is a resident of, and domiciled in, the State of Illinois.  Plaintiff Wiltshire purchased his Coin Miner for his own personal use.

34.     On January 13, 2014, Plaintiff Wiltshire placed an order for a 1.2TH/s Coin Miner (Order #1324) from Defendants.

35.     On January 30, 2014, Plaintiff Wiltshire sent Defendants a check for the full amount owed on his Coin Miner - $5,482.

36.     Defendants cashed Plaintiff Wiltshire's check on or around February 4, 2014.

- 9 -

Plaintiffs' First Amended Complaint

37.     Defendants stated that the 1.2TH/s model was scheduled to arrive at Plaintiff Wiltshire's designated shipping address on or around March 16, 2014.

38.     As of June 25, 2014, Plaintiff Wiltshire has not received the 1.2TH/s Coin Miner that he ordered and sent a check for on January 30, 2014.  As discussed in more detail below, Plaintiff Lewis has followed up with Defendants numerous times to no avail.  Plaintiff Lewis has been and continues to be damaged by the acts alleged herein.

**The Defendants**

39.     Defendant Advanced Mining Technology, Inc. a/k/a Advanced Mining Technologies, Inc. ("AMT") holds itself out as a manufacturer of specialized technology equipment used to mine bitcoins. AMT has been taking order for AMT Bitcoin Miners since approximately mid- 2013.

40.     AMT inconsistently operates under alternating company names, Advanced Mining **Technology**, Inc. and Advanced Mining **Technologies**, Inc. (emphasis added).  AMT's official website, sales agreement, and former office building signage all refer to the company as Advanced Mining Technology, Inc.   The Defendants' emails list the company name as Advanced Mining Technology.   However, in blog posts and You Tube videos uploaded by Defendants, they refer to AMT as Advanced Mining Technologies, Inc.   Additionally, the Domain Name System (DNS) registrant name for Defendants' website is listed as Advanced Mining Technologies, Inc.   There is a business entity by the name of Advanced Mining Technologies, Inc. that registered in the State of Delaware (File Number: 5341525) on May 29, 2013.

41.     As of December 2013, AMT moved its principal place of business from 1254 West Chester Pike, Havertown, PA 19083 to 355 Lancaster Avenue, Building E1, Haverford,

Pennsylvania 19041.  According to the signage, the small office space is shared with Madison Mortgage Services, a fictitious entity that registered in Pennsylvania (File Number: 2814954) on May 4, 1998.  AMT's principal place of business is now purportedly located in Jenkintown, Pennsylvania.

42.     On information and belief, Defendant Joshua Zipkin ("Zipkin") is a resident of Pennsylvania and is a founder, owner, officer and/or employee of AMT.  At all times mentioned herein, Zipkin was acting within the course and scope of his authority as an owner, co-owner, agent, representative and/or alter ego of their co-defendant, and with the full knowledge, permission and consent of each and every other defendant in committing the acts hereinafter alleged.

43.     On information and belief, Defendant Jim Brown ("Brown") is a resident of Pennsylvania and is a founder, owner, officer and/or employee of AMT. At all times mentioned herein, Brown was acting within the course and scope of his authority as an owner, co-owner, agent, representative and/or alter ego of their co-defendant, and with the full knowledge, permission and consent of each and every other defendant in committing the acts hereinafter alleged.

## JURISDICTION AND VENUE

44.     AMT, Zipkin and Brown are subject to personal jurisdiction in this Court because they reside in this judicial district, AMT's principal place of business is within this district, and all Defendants have engaged in systematic and continuous contacts with this district by virtue of their business activities.

45.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because AMT's principal place of business is in this judicial district, Defendants reside and conduct

business in the district, and because a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

46.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.

## FACTUAL ALLEGATIONS

### A.  The Bitcoin Mining Process.

47.     Bitcoin is a "cryptocurrency", a type of computer-driven virtual currency which has gained momentum since its introduction in 2009.  As a result, the Internal Revenue Service issued a formal notice, IR-2014-36, on March 25, 2014 declaring that bitcoin will be treated as property, not currency, for federal tax purposes.  Unlike traditional currencies, which are issued by central banks, bitcoin has no central monetary authority.  Instead, it is underpinned by a database of valid bitcoins maintained over a peer-to-peer network made up of its users' machines.  The entire network is used to monitor and verify both the creation of new bitcoins through mining, and the transfer of bitcoins between users.

48.     New bitcoins are generated by a competitive and decentralized process called "mining."  Bitcoin mining means, essentially, "generating bitcoins".  Bitcoin Miners are machines that use technology to process transactions, specifically, to solve complex

- 12 -

Plaintiffs' First Amended Complaint

mathematical algorithms, to mine, or generate, a bitcoin.   The bitcoin market is extremely volatile.  As of June 25, 2014 the current valuation of a bitcoin was approximately $561.13.[2]

49.     Bitcoin mining is a very competitive business.  Bitcoins are created at a fixed rate and the total number of bitcoins that can ever be mined is capped at approximately 21 million. Not only does the mathematics of the bitcoin system become progressively more difficult making bitcoins more difficult to mine, but as more miners join the network it becomes increasingly difficult to make a profit.[3]   For this reason, it is critical that someone looking to profit from bitcoin mining begin the process as soon as possible.

50.     Moreover, ever-increasing computing power is necessary to mine the same amount of bitcoins.  Consequently, prompt acquisition of the latest technology with optimal processing power is critical for miners and so is the timing of the Bitcoin Miner shipments since the computing equipment continually becomes less efficient at processing, thus less valuable over time.

51.     While there is no tangible currency, bitcoins can be bought and sold in return for traditional currency on several exchanges, and can also be directly transferred across the internet from one user to another.   Bitcoins are stored on computers or held by the purchaser or a third party in a so-called virtual wallet.  Once the bitcoins are in the virtual wallet, they can be used to purchase items from any merchant willing to accept them or sell them to someone willing to buy them.

**B.  <u>AMT.</u>**

52.     According to its website, AMT develops SHA-256 coin mining technology for personal and business level mining devices. AMT refers to itself as "a technology manufacturer",

---

[2] *See* https://bitpay.com/bitcoin-exchange-rates (last visited June 25, 2014).
[3] https://bitcoinwisdom.com/bitcoin/difficulty

Plaintiffs' First Amended Complaint

"created to provide the average investor with the ability to participate in the new digital currency economy."

53.     AMT also states on its website that AMT "mining technology is built with application-specific integrated circuit (ASIC) 28mn chips in order to provide our clientele with the best mining hardware available on the market."

54.     AMT also touts that it brings its customers, "the ability to participate in the markets of tomorrow, today. We believe that a massive opportunity to profit from coin mining exists for anyone who is equipped with the proper technology. As with any great development opportunity, risk is attached. At AMT, we endeavor to mitigate the risk for our clientele by offering customized hardware with modular options which allow customers to upgrade easily. Let us help you reap rewards through the use of our technological capabilities and extensive cryptocurrency experience."

55.     AMT sells the following Bitcoin Miners: 80 GH/s Coin Miner ($1,499), AMT 128 GHs Bitcoin Miner ($1,599), AMT 180 GHs Bitcoin Miner ($1,899), AMT 220 GH/s Coin Miner ($2,899), 320 GH/s Coin Miner ($3,199), 520 GH/s Coin Miner ($3,999), and 1.2TH/s Coin Miner ($5,599), AMT 2.4Th/s Bitcoin Miner ($9,999), AMT 3.2THs Bitcoin Miner ($14,999)(collectively, the "AMT Bitcoin Miners").

56.     According to AMT, it has been shipping AMT Bitcoin Miners since November 2013 and claims to "design, build, assemble and ship" a line of high speed ASIC miners.

57.     AMT conducts business and accepts orders exclusively through its website (www.advanceminers.com).

58.     AMT also sells a "Miner Protection Plan" to customers who purchase a Bitcoin Miner.  The Miner Protection Plan guarantees, *inter alia*, "enough hashing power to meet ROI

Plaintiffs' First Amended Complaint

[return on investment] and then some, when mining SHA-256 coin. If the networks increases [sic] to a point where your investment in our technology is no longer profitable, AMT will upgrade your miner to the next level Miner absolutely free."  For Bitcoin Miners purchased from September 26, 2013 onward, the Miner Protection Plan is automatically applied.  Bitcoin Miner purchases that were made prior to AMT's "update" to include the Miner Protection Plan to its Bitcoin Miners were covered automatically.

59.     AMT's website provides a phone number that is linked to an automated recording that offers three different options: (1) sales, (2) billing and payment, and (3) technical support and all other questions.  All three options initiate the same recording which states that due to high call volumes callers should leave a message that will be returned by a representative within 24 hours.  Plaintiffs and members of the Class have repeatedly called this number, left messages and have not received responses to their inquiries about their orders and/or requests for refunds.

60.     AMT's website claims to accept various methods of payment including PayPal, bitcoin, check, wire transfer, and credit cards (but only for smaller miner purchases).; however, AMT routinely refuses to process credit card purchases.  The two banks that AMT use for wire transfers include Raiffeisen Bank located in Sofia, Bulgaria, and US Bank.

61.     Each of the Bitcoin Miners sold by AMT is subject to the buyer agreeing to its "Terms of Sale."  This is a contract of adhesion drafted exclusively by AMT, and without any opportunity for negotiation by consumers. While AMT has exclusive knowledge of its inventory backlog and disputes with suppliers, it does not disclose these material facts to buyers.  Under the circumstances, the one-sided limitation on recoverable damages in AMT's terms and conditions is unconscionable and, therefore, unenforceable.  Moreover, Defendants should be equitably estopped from relying on or enforcing this provision vis-à-vis Plaintiffs and Class

- 15 -
Plaintiffs' First Amended Complaint

members.  Attached hereto as Exhibit A is a true and correct copy of Defendants' Terms and Conditions.

**C.  Plaintiff Lenell's Orders From AMT.**

62.     Plaintiff Lenell's order for a 1.2TH/s Coin Miner (Order #610) was placed on November 11, 2013 and paid for in full in the amount of $5,959 by wire transfer on December 9, 2013 to US Bank.  Defendants affirmatively stated in email correspondence that the 1.2TH/s Miner would be delivered the "first week of January."

63.     Then on December 10, 2013, Plaintiff Lenell placed a second order, using his credit card, through Defendants' website for a 80 GH/s Coin Miner (Order #975) totaling $1,705. When Plaintiff Lenell contacted Defendant Brown to confirm his order on December 12, 2013, Defendant Brown responded to Plaintiff Lenell, "Id give up on the CC Craig", and instructed him to pay by either check or wire transfer.

64.     Despite the payment option information provided on Defendants' website and confirmed through direct correspondence with Defendants, Defendants refused to process Plaintiff Lenell's credit card order.  Defendant Zipkin explained in an email dated February 24, 2014 that credit card payments were not yet an option because Defendants were "negotiating commissions and the percentage held of fund and other terms with [their] merchant processor." Plaintiff Lenell was unwilling to purchase the miner using a different form of payment so he forewent the option to buy the 80 GH/s Bitcoin Miner.

65.     Defendants falsely claimed to accept credit card orders in an effort to appear legitimate in the marketplace, but Defendants only accepted payment methods that immediately released non- retractable and non-disputable funds.  Defendants not only told customers directly that credit cards were accepted for smaller orders, but Defendants listed credit cards as a

payment method on the website,  allowing customers to submit credit card orders, only to deny them.  If Defendants were unwilling to process credit cards, then the option should not have appeared on the website nor discussed with customers.

66.     When Plaintiff Lenell did not receive the 1.2TH/s Bitcoin Miner by the stated delivery date he proceeded to email Defendants to ask for a shipment status update.  Defendants failed to respond to Plaintiff Lenell within a reasonable time which prompted Plaintiff Lenell to post honest, personal accounts about his AMT purchasing experience on Amazon.com and Bitcoin Talk.

67.     Defendants lashed back at Plaintiff Lenell for conveying his experiences on the public forums.  In an email from Defendant Zipkin dated February 24, 2014, Defendant Zipkin said that Plaintiff Lenell's conduct was "inappropriate and somewhat childish" as well as "immature and relatively uncalled for."  Then Defendant Zipkin went on to demand that Plaintiff Lenell remove the comments, otherwise, "we will not be refunding you or taking any action until you do so."

68.     Plaintiff Lenell removed the reviews in an attempt to induce Defendants to either deliver the two Bitcoin Miners that he purchased or issue him a refund.  Defendants failed to take action, so Plaintiff Lenell re-posted the reviews.

69.     In a March 6, 2014 email, nearly three months after Plaintiff Lenell paid for his 1.2TH/s Bitcoin Miner in full, Defendant Zipkin responded, "remove the links and the bad reviews and we'll send you your refund."   In response, Plaintiff Lenell informed Defendant Zipkin that he was going to file a complaint with the FTC and Delaware County.  This spurred Defendant Zipkin to promptly reply, "Seriously?  Stop screwing around man.  We sent your check out last week!"  Plaintiff Lenell questioned Defendant Zipkin about the contradictory

Plaintiffs' First Amended Complaint

statements concerning the refund in which Defendant Zipkin had AMT's accounting department confirm that a refund was mailed via regular mail on March 4, 2014.

70.     By March 14, 2014, ten days after Defendant Zipkin claimed to have mailed the refund check, Plaintiff Lenell still had not received it.  After much procrastination and circuitous conversation about the unreliable nature of USPS, Defendant Zipkin claimed that they had to cancel the check and send another one or, he alternatively offered to send a 1.2TH/s Bitcoin Miner to Plaintiff Lenell.

71.     Plaintiff Lenell was displeased with Defendants' conduct and informed Defendant Zipkin on March 16, 2014 that he was filing a complaint with the Better Business Bureau.  In retaliation, Defendant Zipkin revoked his prior offer and indicated that "because of [Plaintiff Lenell's] hostility and complaints, we'll just ship you a miner next week."

72.     As of June 25, 2014, Plaintiff Lenell has not received either the 1.2TH/s Bitcoin Miner that he paid for in full or a refund.  Plaintiff Lenell has been and continues to be damaged by the acts alleged herein.  Plaintiff Lenell has suffered injury in fact in the amount of $5,959 as a result of Defendants' unwillingness to deliver the purchased product and/or issue a refund. Additionally, Plaintiff Lenell is also harmed by AMT's failure to provide him with return on investment and a new Miner, pursuant to the Miner Protection Plan, and has been further harmed by the inability to mine Bitcoins as the competitive environment of bitcoin mining continues to increase.  Plaintiff Lenell has experienced lost opportunity to mine Bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased model has decreased.   In sum, Plaintiff Lenell has suffered tens of thousands of dollars in damages.

Plaintiffs' First Amended Complaint

### D.  **Plaintiff Urbanek's Order From AMT.**

73.    On December 4, 2013, Plaintiff Urbanek placed an order for three (3) 1.2TH/s Coin Miners (Order #870) from Defendants and paid for in full in the amount of $18,157 using Bitpay, an electronic payment processing system that instantly converts bitcoins into the seller's currency of choice.

74.    Defendants stated that the three 1.2TH/s Bitcoin Miners were scheduled for delivery between February 4, 2014 and February 10, 2014.  When the miners were not received within the stipulated delivery window, Plaintiff Urbanek attempted to contact Defendants by phone and email, but was unsuccessful.

75.    It was not until February 27, 2014, that Plaintiff Urbanek received a response from Defendants.  The email claimed that "the entire team is in the manufacturing facility day and night – testing, building, adjusting and so on."    The email failed to supply a revised shipment date, but rather informed Plaintiff Urbanek that Defendants would keep him posted on the shipment of his miners as they move down the waiting list.

76.    Recognizing that the prolonged delay in receiving the three Bitcoin Miners continued to decrease the promised return on investment, Plaintiff Urbanek made his first request for a refund on March 3, 2014, one month after the expected delivery date.  Plaintiff Urbanek's for a refund requests went unanswered until Defendant Brown responded on March 26, 2014. Defendant Brown claimed that Plaintiff Urbanek's Bitcoin Miners were shipping out in the next few days and that Defendant Brown was personally heading "over to the assembly hall now to see if [he could] bump [Plaintiff Urbanek] up sooner."

77.    As of June 25, 2014, Plaintiff Urbanek has not received the three 1.2TH/s Bitcoin Miners that he ordered and paid for in full on December 4, 2013.  Plaintiff Urbanek has been and

Plaintiffs' First Amended Complaint

continues to be damaged by the acts alleged herein.  Plaintiff has suffered injury in fact in the amount of $18,157 as a result of Defendants' unwillingness to deliver the purchased products and/or issue a refund.  Additionally, Plaintiff Urbanek is also harmed by AMT's failure to provide him with return on investment and new Miners, pursuant to the Miner Protection Plan, and has been further harmed by the inability to mine Bitcoins as the competitive environment of bitcoin mining continues to increase.  Plaintiff Urbanek experienced lost opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased miner has decreased. In sum, Plaintiff Urbanek has suffered tens of thousands of dollars in damages.

### E.  Plaintiff Pela's Order From AMT.

78.     On December 13, 2013, Plaintiff Pela placed an order (Order #:1072) through Defendants' website for a 1.2TH/s Coin Miner.  At that time, Defendants' promotional banner on the website homepage stated, "AMT 1.2 THs Orders Open for First Week of February Delivery". The total cost of the order was $6,089 which Plaintiff Pela paid for using bitcoins via Coinbase, an online bitcoin wallet for sending, receiving, and storing bitcoins. At the time Plaintiff Pela purchased the Bitcoin Miner the valuation of a bitcoin was approximately $889.00.[4]

79.     On December 16, 2013, Plaintiff Pela emailed Defendants to confirm that his order went through successfully.  Defendants responded that they would look into the order and confirm if payment was received.  Plaintiff Pela did not receive a response so he followed up again on December 18, 2013.  Defendant Brown responded that the order was received and notified Plaintiff Pela that he actually overpaid for the miner and would be issued a refund.

---

[4] http://www.coindesk.com/price/

Plaintiffs' First Amended Complaint

80.     On December 24, 2013, Plaintiff Pela emailed Defendant Brown asking for the status of the refund and questioned if he could pick up the miner from Defendants' office.  On December 26, 2013, Defendant Brown stated that Defendants were encountering problems with the refund process, but confirmed that Plaintiff Pela could pick up the miner directly from Defendants' office when it was ready.

81.     All communication with Defendants ceased after this correspondence, yet Plaintiff Pela continued to email, call and leave voicemails for Defendants asking for a shipment update.  While Defendants refused to respond to Plaintiff concerning his 1.2TH/s Bitcoin Miner, outstanding orders continued to mount; however, Defendants actively accepted new orders, updated its website homepage announcing miner availability, and committed to impractical shipment dates.

82.     On March 6, 2014, nearly three months after placing the order and a month past the estimated delivery date, Plaintiff Pela emailed Defendants to request a refund for his miner order.  Once again, Plaintiff Pela never received a response.

83.     As of April 2, 2014, Defendants' website homepage, shown in the image below, stated, "AMT 1.2 THs Orders Open April Delivery Still Available."  This is the same model purchased by Plaintiff that he is yet to receive.  Meanwhile, Defendants continued to falsely advertise and accept orders for this model when they have not yet fulfilled the orders dating back over three months.

Plaintiffs' First Amended Complaint



84.     As of June 25, 2014, Plaintiff Pela has not received the 1.2TH/s Bitcoin Miner that he ordered and paid for in full on December 13, 2013.  Plaintiff Pela has suffered injury in fact in the amount of $6,089 as a result of Defendants' unwillingness to deliver the purchased product and/or issue a refund.  Additionally, Plaintiff Pela is also harmed by AMT's failure to provide him with return on investment and a new Miner, pursuant to the Miner Protection Plan, and has been further harmed by the inability to mine Bitcoins as the competitive environment of bitcoin mining continues to increase.  Plaintiff Pela has experienced lost opportunity to mine Bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased model has decreased.   In sum, Plaintiff Pela has suffered tens of thousands of dollars in damages.

## F.   <u>Plaintiff Christian's Order From AMT.</u>

85.     On October 29, 2013, Plaintiff Christian placed an order for a 1.2TH/s Coin Miner (Order # 550) from Defendants and paid for in full in the amount of $5,399 through a wire transfer.

86.     Defendants stated that the 1.2TH/s Bitcoin Miner was scheduled for delivery between December 23, 2013 and December 27, 2013.  When his miner was not received within the stipulated delivery window, Plaintiff Christian attempted to contact Defendants by phone and email, but was unsuccessful.

87.     From the week of December 23, 2013, onward, Plaintiff Christian constantly emailed Defendants to inquire about when his Coin Miner would arrive.  Defendants repeatedly ignored Plaintiff Christian's emails.  Only after Plaintiff Christian sent several emails did Defendants finally respond.  At numerous times, Defendants promised Plaintiff Christian his machine would be shipped out and delivered to him shortly.

88.     Recognizing that the prolonged delay in receiving the Bitcoin Miner continued to decrease the promised return on investment, Plaintiff Christian made a request for Defendants to refund him the full price of his Coin Miner.

89.     As of June 25, 2014, Plaintiff Christian has not received the 1.2TH/s Bitcoin Miner that he ordered and paid for in full on October 29, 2013.  Plaintiff Christian has been and continues to be damaged by the acts alleged herein.  Plaintiff Christian has suffered injury in fact in the amount of $5,399 as a result of Defendants' unwillingness to deliver the purchased products and/or issue a refund.  Additionally, Plaintiff Christian is also harmed by AMT's failure to provide him with return on investment and a new Miner, pursuant to the Miner Protection Plan, and has been further harmed by the inability to mine Bitcoins as the competitive environment of bitcoin mining continues to increase.  Plaintiff Christian has experienced lost opportunity to mine Bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased model has decreased.   In sum, Plaintiff Christian has suffered tens of thousands of dollars in damages.

G.  **Plaintiff Lewis' Order from AMT.**

90.     On January 2, 2014, Plaintiff Lewis purchased placed an order for a 1.2TH/s Coin Miner (Order #1243) from Defendants and paid for in full in the amount of $6,159 by mailing a cashier's check.

Plaintiffs' First Amended Complaint

91.     Defendants stated that the 1.2TH/s model was scheduled to ship the week of February 25, 2014.  When his miner was not received within the stipulated delivery window, Plaintiff Lewis attempted to contact Defendants by phone and email, but was unsuccessful.

92.     From the week of February 25, 2014, onward, Plaintiff Lewis constantly emailed Defendants to inquire about when his Coin Miner would arrive.  Defendants initially apologized to Plaintiff Lewis for the delay, but thereafter repeatedly ignored Plaintiff Lewis' emails.

93.     Recognizing that the prolonged delay in receiving the Bitcoin Miner continued to decrease the promised return on investment, Plaintiff Lewis made a request for Defendants to refund him the full price of his Coin Miner.

94.     As of June 25, 2014, Plaintiff Lewis has not received the 1.2TH/s Bitcoin Miner that he ordered and paid for in full.  Plaintiff Lewis has been and continues to be damaged by the acts alleged herein.  Plaintiff Lewis has suffered injury in fact in the amount of $6,159 as a result of Defendants' unwillingness to deliver the purchased products and/or issue a refund. Additionally, Plaintiff Lewis is also harmed by AMT's failure to provide him with return on investment and a new Miner, pursuant to the Miner Protection Plan, and has been further harmed by the inability to mine Bitcoins as the competitive environment of bitcoin mining continues to increase.  Plaintiff Lewis has experienced lost opportunity to mine Bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased model has decreased.   In sum, Plaintiff Lewis has suffered tens of thousands of dollars in damages.

**H.  Plaintiff Wiltshire's Order From AMT.**

95.     On January 13, 2014, Plaintiff Wiltshire purchased placed an order for a 1.2TH/s Coin Miner (Order #1075) from Defendants and paid in full in the amount of $5,482.00 by mailing a personal check.

Plaintiffs' First Amended Complaint

96.     Defendants stated that the 1.2TH/s model was scheduled to arrive on or around March 16, 2014.

97.     Plaintiff Wiltshire contacted Defendants on March 7, 2014 by email to ensure that his Coin Miner would be delivered on time.   Defendants refused to respond to Plaintiff Wiltshire's subsequent emails and telephone calls.

98.     Fearing he had been scammed, Plaintiff Wiltshire filed an online complaint with the Pennsylvania Attorney General on March 9, 2014.

99.     On March 10, 2014, Defendant Jim Brown responded and assured that Plaintiff Wiltshire would receive his order shortly.

100.     Recognizing that the prolonged delay in receiving the Bitcoin Miner continued to decrease the promised return on investment, Plaintiff Wiltshire made a request for Defendants to refund him the full price of his Coin Miner.

101.     As of June 25, 2014, Plaintiff Wiltshire has not received the 1.2TH/s Bitcoin Miner that he ordered and paid for in full.   Plaintiff Wiltshire has been and continues to be damaged by the acts alleged herein.   Plaintiff has suffered injury in fact in the amount of $5,482 as a result of Defendants' unwillingness to deliver the purchased products and/or issue a refund. Additionally, Plaintiff Wiltshire is also harmed by AMT's failure to provide him with return on investment and a new Miner, pursuant to the Miner Protection Plan, and has been further harmed by the inability to mine Bitcoins as the competitive environment of bitcoin mining continues to increase.   Plaintiff Wiltshire has experienced lost opportunity to mine Bitcoins during which time the mining difficulty has increased and the computing efficiency of the purchased model has decreased.   In sum, Plaintiff Wiltshire has suffered tens of thousands of dollars in damages.

Plaintiffs' First Amended Complaint

**I.   Defendants' Failure to Deliver Purchased Bitcoin Miners, Rightfully Issue Refunds, or Deliver Purchased Bitcoin Miners that Perform as Advertised.**

102.   Like many members of the bitcoin community, Plaintiffs were participants in the internet message board and community known as Bitcoin Talk (https://bitcointalk.org/index.php?topic=304605.3660).  Bitcoin Talk, along with other websites, is replete with examples from members of the bitcoin community that have encountered the same order fulfillment issues and/or denial of refund by AMT.

103.   Defendants were not only an active participant in this community, but initiated the official "AMT" Bitcoin Talk thread on September 29, 2013, only 19 days after registering its website.[5]

104.   Defendants engaged in a wide range of promotion, all of which can now be discredited, via Bitcoin Talk, including (1) inviting members to visit their office, (2) announcing partnerships and expansions, (3) guaranteeing shipment within four weeks from the date of purchase or a full refund[6], and (4) claiming customers could buy Bitcoin Miners using credit cards.

105.   Most importantly, Defendants publicly committed to various and specific shipment schedules.   On October 29, 2013, Defendants announced that they would "start shipping mid-September orders on Monday the 4th" of November 2013.  For customers that ordered at the end September/early October, "miners will ship from the 4th – 8th" of November 2013.  Mid-October orders "will ship by the 11th –14th" of November 2013.  Defendants stated that the revised purchase – shipment turnaround time was "24 – 28 days."

---

[5] AMT's introductory Bitcoin Talk post, dated September 29, 2013, was revised on February 1, 2014.
[6] Comment posted by AMT on October 2, 2013.

Plaintiffs' First Amended Complaint

106.    Defendants then publicly revised the scheduled shipment dates on  February 21, 2014 as follows:  October – early November 2013 orders to ship February 24 – 26, 2014; mid-November 2013 orders to ship February 26 – 28, 2014; end of November 2013 orders to ship March 3 – 5, 2014; early December 2013 orders to ship March 5 –7, 2014;  mid-December 2013 orders to ship March 10 – 14, 2014; end of December 2013 orders to ship March 17 –19, 2014; and January 2014 orders to ship either March 19 -21, 2014 or March 26 – 28, 2014.  This revised shipping schedule reflects orders pending fulfillment for nearly five months – a far cry of Defendants' promised order fulfillment of 24 – 28 days.  With that being said, as of April 1, 2014, nearly all the fully purchased orders are still outstanding.

107.    As a result, Plaintiffs and Class members are relentlessly trying to obtain refunds from Defendants; however, Defendants refuse to respond and/or issue refunds.  In response to dissatisfied and frustrated customers, Defendants posted the following to Bitcoin Talk on March 7, 2014:

> "Again, we are shipping, we're understaffed…We're not sitting around mining with your rigs, we're just trying to get them out the door as fast as possible [and] using everyone to do so.  Customer service and sales is slipping because of that. We need help from local guys from this forum that will help assemble, right now we're only getting 10-25 units out a day…Delays are due to labor issues and lack of staff."

108.    Per Defendants' above solicitation, local members of the Bitcoin Talk community responded by offering their assistance to assemble the miners.  However, Defendants declined to accept, or even acknowledge, the offers from the community to help build the miners.

109.    Defendants are consistently rude, unprofessional and have threatened members of the Class who have publicized their dissatisfaction with Defendants' failure to deliver the purchased Bitcoin Miners and/or issue refunds.

110.    Upon information and belief, Defendants are not operating a legitimate business.

Plaintiffs' First Amended Complaint

111.    Plaintiffs and Class members paid Defendants for Bitcoin Miners that they have not received.

112.    Defendants have failed to meet the terms and conditions of their sales agreement with Plaintiffs and Class members.

113.    As evidenced by the foregoing, Defendants have no intention of manufacturing or delivering the Bitcoin Miners purchased by the Class, and/or Defendants are using the money paid to them by the Plaintiffs and Class members to manufacture the Bitcoin Miners, but are using them to mine bitcoins for their own benefit.  Once the benefit from the illegitimately used Bitcoin Miners has been conferred to Defendants, Defendants may then, after undue delay, opt to ship the Bitcoin Miners to the Plaintiffs and Class members.

114.    Upon information and belief, no Class Members who have a Bitcoin Miner covered by the "Miner Protection Plan" have received a "next level Miner absolutely free" Defendant's Bitcoin Miners not meeting the Class Members return on investment, and thus Defendants have an obligation to Plaintiffs and the Class under the Miner Protection Plan that Defendants are not fulfilling. The majority of Plaintiffs and the Class have not received their Bitcoin Miners weeks or months after the delivery date promised by Defendants, meaning such Plaintiffs and Class Members have received zero return on their investment thus far.

115.    Furthermore, for Plaintiffs and the Class who actually received their Bitcoin Miners, their Bitcoin Miners do not meet their return on investment and are entirely unprofitable. This is because Defendant's assembled and sent incomplete or improperly assembled Bitcoin Miners to Class Members.[7]

---

[7] The internet is replete with examples describing the misassembled and incomplete Bitcoin Miners that Defendants sent to the Class members.  For example, user "FrictionlessCoin" posted the following on Bitcoin Talk regarding the AMT Bitcoin Miner he received:

Plaintiffs' First Amended Complaint

116.    Upon information and belief, Defendants have told Class members that Defendants are no longer offering the Miner Protection Plan protection to customers that previously had such protection.

117.    Plaintiffs and Class members are increasingly harmed as more time lapses since the competitive environment of bitcoin mining continues to increase, thus requiring the most innovative bitcoin mining technology.   Consequently, the Defendants' miners that were purchased months ago and not delivered, are now less effective and less valuable.   In addition, Plaintiffs and the Class have been unable to mine Bitcoins while they wait for their Bitcoin Miners from Defendants and suffer daily losses from their inability to mine.   Upon information and belief, Plaintiffs and the Class are suffering aggregate losses in the thousands or tens of thousands of dollars per day, if not more.

## CLASS ALLEGATIONS

118.    Plaintiffs bring this action on behalf of themselves, and on behalf of the following Class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3):

---

"Let's just list the 'little' things they forgot to do: (1) Forgot to put adequate padding on the shipment. (2) Forgot to include a backplane. (3) Forgot to ship a missing backplane. (4) Forgot to include basic instructions to wire up the system. (5) Forgot to accept a returned package (3) times.

That's just the logistics part of shipping a supposedly working unit.  How about the assembly part. (1) Forgot to test the system prior to shipping. (2) Forgot to apply thermal paste properly. (3) Used the smallest possible heatshink [sic] (4) Forgot to align the boards so that the backplane could fit. (5) Never figured out how to provide enough power for 1.2 THs boards.  BTW... where is that backplane that was supposed to power 6 boards... I guess it never existed.. in short AMT never had a chance of delivering a 1.2 THs system."

*See, e.g.*, https://bitcointalk.org/index.php?topic=569769.msg6595343#msg6595343 (posting #1031) (last visited June 26, 2014).

Plaintiffs' First Amended Complaint

All persons in the United States and the world who purchased AMT Bitcoin Miners and never received the AMT Bitcoin Miner, untimely received the AMT Bitcoin Miner, or received an AMT Bitcoin Miner that did not perform as advertised (the "Nationwide Class").

The law of Pennsylvania should be applied to the claims of all members of the Nationwide Class pursuant to the "Governing Law" section of AMT's terms and conditions, which states "[t]he terms of this document shall be interpreted, construed, and governed in all respects in accordance with the laws of the state of Pennsylvania, U.S.A., excluding its conflict of laws provisions."

119.   In the alternative to the Nationwide Class, Plaintiffs seek to represent the following state-specific classes:

All persons in Pennsylvania who purchased AMT Bitcoin Miners and never received the AMT Bitcoin Miner, untimely received the AMT Bitcoin Miner, or received an AMT Bitcoin Miner that did not perform as advertised (the "Pennsylvania Class").

All persons in North Carolina who purchased AMT Bitcoin Miners and never received the AMT Bitcoin Miner, untimely received the AMT Bitcoin Miner, or received an AMT Bitcoin Miner that did not perform as advertised (the "North Carolina Class").

All persons in Florida who purchased AMT Bitcoin Miners and never received the AMT Bitcoin Miner, untimely received the AMT Bitcoin Miner, or received an AMT Bitcoin Miner that did not perform as advertised (the "Florida Class").

All persons in Utah who purchased AMT Bitcoin Miners and never received the AMT Bitcoin Miner, untimely received the AMT Bitcoin Miner, or received an AMT Bitcoin Miner that did not perform as advertised (the "Utah Class").

All persons in Oregon who purchased AMT Bitcoin Miners and never received the AMT Bitcoin Miner, untimely received the AMT Bitcoin Miner, or received an AMT Bitcoin Miner that did not perform as advertised (the "Oregon Class").

All persons in California who purchased AMT Bitcoin Miners and never received the AMT Bitcoin Miner, untimely received the AMT Bitcoin Miner, or received an AMT Bitcoin Miner that did not perform as advertised (the "California Class").

All persons in Illinois who purchased AMT Bitcoin Miners and never received the AMT Bitcoin Miner, untimely received the AMT Bitcoin Miner, or received an AMT Bitcoin Miner that did not perform as advertised (the "Illinois Class").

120.   Numerosity:  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe and on that basis allege that there are hundreds of members of the Class who purchased hundreds of AMT Bitcoin Miners.

121.   Ascertainability.   Class members can be easily identified from Defendants' website and sales records.

122.   Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to: whether Defendants' failure to deliver the purchased AMT Bitcoin Miners is a breach of contract;  whether Defendants' failure to timely deliver the purchased AMT Bitcoin Miners is a breach of contract and harmed the Class; whether Defendants' conduct constitutes unlawful business acts and practices; whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the AMT Bitcoin Miners, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or value; and, whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies, including rescission, and, if so, the nature of any such relief.

123.   Typicality:  All of Plaintiffs' claims are typical of the claims of the Class since Plaintiff and each member of the Class paid for a AMT Bitcoin Miner and did not receive the AMT Bitcoin Miner or a refund, and/or did not timely receive the AMT Bitcoin Miner.

Plaintiffs' First Amended Complaint

Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' failure to deliver the purchased AMT Bitcoin Miners and wrongful conduct alleged herein.  Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class.

124.   <u>Adequacy</u>:  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained competent counsel who is highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.   The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

125.   <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of the Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.   Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' purchase records and the database of complaints.

Plaintiffs' First Amended Complaint

126.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
### BREACH OF CONTRACT
**(On behalf of the Nationwide Class, or Alternatively each of the state-wide classes)**

127.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

128.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against all Defendants.

129.    A sales agreement exists between Plaintiffs and the Class members, and Defendants.  Plaintiffs and the Class performed their obligations under the agreement by paying in full for the purchased AMT Bitcoin Miners.

130.    Moreover, Defendants were aware of the time-sensitive nature of the delivery date for the product because of the specialized nature of the bitcoin mining.  Defendants made specific assurances to Plaintiffs and the Class members regarding the delivery deadline. Defendants' failure to deliver the product by its advertised delivery date is a material breach of the agreement.

131.    In addition, for members of the Class that actually received their Bitcoin Miners, their Bitcoin Miners do not perform as advertised, warranted, or promised by Defendant.

132.    Plaintiffs and the Class members have been damaged by Defendants' actions and are entitled to be compensated for resulting damages, and are entitled to a refund as per the terms of the agreement.

Plaintiffs' First Amended Complaint

## COUNT II
## BREACH OF EXPRESS WARRANTY
**(On behalf of the Nationwide Class, or Alternatively each of the state-wide classes)**

133.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

134.   The AMT Bitcoin Miners are goods within the meaning of the Uniform Commercial Code.

135.   Defendants expressly warranted that they would deliver the AMT Bitcoin Miners to Plaintiffs and Class members, and do so in a timely manner.

136.   Defendants did not do so.  This was a material breach of contract that caused damages to Plaintiffs and Class members.

137.   In addition, for members of the Class that actually received their Bitcoin Miners, their Bitcoin Miners do not perform as advertised, warranted, or promised by Defendant, constituting a breach of the express warranty between Defendants and Plaintiffs and the Class. As a result, Plaintiffs and the Class members have suffered damages from Defendants' breach of warranty in the form of loss of investment and substantial loss in opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the AMT Bitcoin Miners have decreased.

## COUNT III
## COMMON LAW FRAUD
**(On behalf of the Nationwide Class, or Alternatively each of the state-wide classes)**

138.   Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

Plaintiffs' First Amended Complaint

139.    Defendants made material omissions concerning manufacturing and delivery schedule, made false statements about issuing refunds, and made false statements regarding the expected performance of the Bitcoin Miners.

140.    Defendants willfully failed to state material facts, and/or willfully concealed, suppressed, or omitted such material facts.

141.    Defendants willfully used exaggeration, falsehood, innuendo, and/or ambiguity as to material facts in its written representations.

142.    As a result, Plaintiffs and the Class members were fraudulently induced to purchase the AMT Bitcoin Miners.

143.    These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and the Class members would rely on them.

144.    Plaintiffs and the Class members reasonably relied on these omissions, and suffered damages as a result.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
**(On behalf of the Nationwide Class, or Alternatively each of the state-wide classes)**

145.    Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

146.    On information and belief, Defendants supplied false information in order to induce Class members into sales transactions.

147.    On information and belief, Defendants continued to supply false information in order to prevent Class members from seeking a refund of money even though the sales agreement stated that Defendants would issue refunds in the event that "AMT is unable wholly or partially to perform."

Plaintiffs' First Amended Complaint

148.    On information and belief, Defendants continued to supply false information to protect the Defendants' reputation in the marketplace in order to obtain more sales.

149.    Plaintiffs and Class members reasonably relied on Defendants' false representations when purchasing AMT Bitcoin Miners.

150.    On information and belief, Defendants knew their statements were false when making them and that Class members' reasonable reliance thereon would hinder their ability to productively mine bitcoins.

151.    As a result of Defendants' actions, Plaintiffs and the Class members have suffered economic damages including, but not limited to, loss of investment and substantial loss in opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the AMT Bitcoin Miners have decreased.

**COUNT V**
**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**
**(On behalf of the Nationwide Class, or Alternatively each of the state-wide classes)**

152.    Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

153.    Every contract contains an implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

154.    Defendants breached the covenant of good faith and fair dealing by, *inter alia*, supplying false information, failing to deliver the AMT Bitcoin Miners by the advertised delivery dates or within a reasonable timeframe knowing the time-sensitive nature of the bitcoin market, failing to exercise reasonable care or competence in communicating with Plaintiffs and

Plaintiffs' First Amended Complaint

the Class members, failing to issue refunds, and failing to deliver Bitcoin Miners that perform as advertised, warranted, or promised by Defendants.

155.    Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and the Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

**COUNT VI**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Class, or Alternatively the each of the state-wide classes)**

156.    Plaintiffs and the Class members incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein. This claim is plead in the alternative to the contract based claims.

157.    Plaintiffs and the Class members conferred a benefit on Defendants.  Since mid-2013, the members of the Class have paid Defendants millions of dollars for AMT Bitcoin Miners.

158.    Defendants had knowledge that this benefit was conferred upon them.

159.    However, Defendants have breached their sales agreement by failing to deliver the AMT Bitcoin Miners to the Class, delivering the AMT Bitcoin Miners after undue delay, refusing to issue refunds, and/or failing to deliver Bitcoin Miners that performed as advertised by Defendants.  Such breaches of the agreement have caused the Class millions of dollars in damages.

160.    Defendants have been unjustly enriched at the expense of Plaintiffs and the Class members, and their retention of this benefit under the circumstances would be inequitable. Defendants should be required to make restitution.

Plaintiffs' First Amended Complaint

## COUNT VII
## VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (On Behalf of the Nationwide Class)

161.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

162.    The general purpose of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.* ("UTPCPL"), is to protect the public from fraud and unfair or deceptive business practices.  The UTPCPL provides a private right of action for any person who "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" by the UTPCPL.  73 P.S. § 201-9.2(a).

163.    In the course of Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements.

164.    Plaintiffs and members of the class relied upon Defendants' false and misleading representations and omissions.

165.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the Class members have suffered and will continue to suffer actual damages.

166.    Plaintiffs, individually and on behalf of the other Class members, seeks treble damages and an award of attorneys' fees pursuant to 73 P.S. § 201-9.2(a).

## COUNT IX
## VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C. GEN. STAT. § 75-1.1 *ET SEQ*
### (On Behalf of the North Carolina Class)

167.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

Plaintiffs' First Amended Complaint

168.  North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"  The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA.  N.C. GEN. STAT. § 75-16.

169.  Defendants' acts and practices complained of herein were performed in the course of its trade or business and thus occurred in or affected commerce.

170.  In the course of Defendants' business, they knowingly failed to disclose and actively concealed material facts and made false and misleading statements.

171.  Plaintiffs and members of the class relied upon Defendants' false and misleading representations and omissions.

172.  Defendants' conduct proximately caused injuries to Plaintiffs and the Class.

173.  Plaintiffs, individually and on behalf of the other Class members, seeks treble damages pursuant to N.C. GEN. STAT. § 75-16, and an award of attorneys' fees pursuant to N.C. GEN. STAT. § 75-16.

## COUNT X
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (On Behalf of the Florida Class)

174.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

175.  The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those

H0037264.                                          Plaintiffs' First Amended Complaint

who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202 (2).

176.    Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members material facts about the AMT Bitcoin Miners, and the timing of the delivery thereof.  Defendants should have disclosed this information because they were in a superior position to know these facts, and Plaintiffs and Class members could not reasonably be expected to learn of them until after purchasing the AMT Bitcoin Miners from Defendants.

177.    These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiffs and members of the Class.

### COUNT XI
### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT
#### (On Behalf of the Utah Class)

178.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

179.    The Utah Consumer Sales Practices Act provides a private cause of action for a consumer who has suffered a loss as a result of a violation of the statute.  Utah Code § 13-11-19.

180.    Defendants violated the statute, and did so knowingly and intentionally.

181.    Plaintiffs and Class members have been injured as a result of these violations.

### COUNT XII
### VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES LAW
#### (On Behalf of the Oregon Class)

182.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

Plaintiffs' First Amended Complaint

183.    Defendant is engaged in a "trade" and "commerce" within the meaning of OR. REV. STAT. § 646.605(8).

43.    Defendant is a "person" within the meaning of OR. REV. STAT. §§ 646.605(4), 646.607, and 646.608.

43.    Plaintiffs' and each and every Class members' purchase of the Coin Miners sold by Defendant constitutes a "sale" within the meaning of OR. REV. STAT. § 646.607.

43.    Defendant has advertised those services within the meaning of OR. REV. STAT. § 646.608.

184.    The policies, acts and practices of Defendant as described in this complaint were intended to result in the sale of Coin Miners to Plaintiff and Class members.

185.    Defendant has engaged in unconscionable tactics, false advertising, deceptive practices, unlawful methods of competition, and/or unfair acts as defined in the UTPL, to the detriment of Plaintiff and Class members.  Defendant's unconscionable tactics and deceptive practices have been intentionally, knowingly, and unlawfully perpetrated upon Plaintiff and Class members and have violated and continue to violate the Unlawful Trade Practices Law.

186.    In violation of OR. REV. STAT. § 646.608, Defendant advertises services with the intent to not provide them as advertised.  The standardized practice and advertisements regarding the practice were uniformly applied to Plaintiff and Class members.  Examples of the false and misleading advertisements are set forth above.  As a result, Plaintiff and the Class purchased Coin Miners that they otherwise would not have purchased, or would have paid less for.

187.    As a result of Defendant's action, Plaintiff and Class members have incurred economic damages including, but not limited to, loss of investment and substantial loss in

opportunity to mine bitcoins during which time the mining difficulty has increased and the computing efficiency of the AMT Bitcoin Miners have decreased.

188.    Plaintiff further seeks recovery of attorneys' fees, costs of litigation, punitive damages, and other equitable relief as determined by the court pursuant to OR. REV. STAT. § 646.638.

## COUNT XIII
## VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
### (On Behalf of the California Class)

189.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

190.    Defendants are "persons" as that term is defined in CAL. CIV. CODE § 1761(c).

191.    Plaintiffs and the Class are "consumers" as that term is defined in CAL. CIV. CODE §1761(d).

192.    Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members material facts about the AMT Bitcoin Miners, and the timing of the delivery thereof.  These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

> (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

> (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

> (a)(9) Advertising goods and services with the intent not to sell them as advertised.

Plaintiffs' First Amended Complaint

(10)  Advertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity.

193.    Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

194.    Defendants knew that they would be unable to timely supply Plaintiffs and the Class the Coin Miners they purchased.

195.    Defendants should have disclosed this information because they were in a superior position to know these facts, and Plaintiffs and Class members could not reasonably be expected to learn of them until after purchasing the AMT Bitcoin Miners from Defendants.

196.    In failing to disclose this information, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

197.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Coin Miners or pay a lesser price.  Had Plaintiffs and the Class known about the true nature of Defendant's Coin Miners and business practices, they would not have purchased the Coin Miners or would have paid less for them.

198.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the Class members have suffered and will continue to suffer actual damages.

199.    A declaration pursuant to CAL. CIV. CODE 1780(d) is submitted herewith as Exhibit B.

200.    Plaintiffs seek all relief available under the CLRA.

Plaintiffs' First Amended Complaint

**COUNT XIII**
**VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200**
**(On Behalf of the California Class)**

201.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

202.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

203.    Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by and by knowingly and intentionally concealing from Plaintiffs and Class members material facts about the AMT Bitcoin Miners, and the timing of the delivery thereof.  Defendants should have disclosed this information because they were in a superior position to know the true facts, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts.

204.    These acts and practices have deceived Plaintiffs and are likely to deceive the public.  In failing to disclose material facts about the AMT Bitcoin Miners, and the timing of the delivery thereof, and suppressing other material facts from Plaintiffs and the Class members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class members.  The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

205.    The injuries suffered by Plaintiffs and the Class members are greatly outweighed

Plaintiffs' First Amended Complaint

by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.

206.    Defendants' acts and practices are unlawful because they violate CAL. CIV. CODE §§ 1709, 1710, and 1750 *et seq.*, and CAL. COMM. CODE § 2313.

207.    Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under CAL. BUS. & PROF. CODE § 17200.

<u>COUNT XIV</u>
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD
AND DECEPTIVE TRADE PRACTICES ACT, 815, ILCS 505/1, ET SEQ.
(On Behalf of the Illinois Subclass)**

208.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as if set forth at length herein.

209.    This count is brought against Defendants pursuant to the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815, ILCS 505/1, et seq. ("ICFA").

210.    At all times relevant herein, the ICFA was in effect. The ICFA prohibits "unfair and deceptive practices."

211.    Plaintiffs and members of the Class are consumers.

212.    Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members material facts about the AMT Bitcoin Miners, and the timing of the delivery thereof.  Defendants should have disclosed this information because they were in a superior position to know these facts, and Plaintiffs and Class members could not reasonably be expected to learn of them until after purchasing the AMT Bitcoin Miners from

Plaintiffs' First Amended Complaint

Defendants.

213.    These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiffs and members of the Class.

214.    Defendants intended, and continue to intend, that the Plaintiff and Class members rely on the omissions and false and deceptive business practices described above.

215.    In failing to inform consumers of material facts regarding the AMT Bitcoin Miners, Defendants have engaged in an unfair or deceptive act prohibited by the ICFA.

216.    As a proximate cause of the Defendants' violation of the ICFA, Plaintiff and members of the Class were injured.

217.    If not for Defendants' deceptive and unfair act of concealing from Plaintiff and members of the Class the true nature of the Bitcoin Miners, Plaintiff and members of the Class would not have purchased the Bitcoin Miners. Defendants, at all relevant times, knew or should have known that Plaintiff and members of the Class did not know or could not have reasonably discovered the true nature of the Bitcoin Miners prior to their purchases.

218.    By paying monies for the Bitcoin Miners they did not receive, Plaintiffs and members of the Class have suffered an ascertainable loss.

219.    Defendants' violation of the ICFA entitles Plaintiff and members of the Class under the statute to statutory and actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

Plaintiffs' First Amended Complaint

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class,

respectfully requests that this Court:

A.      determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.      appoint Plaintiffs as the Class representative and their counsel as Class counsel;

C.      award all actual, general, special, treble, incidental, statutory, punitive, and consequential damages to which Plaintiffs and the Class members are entitled;

D.      award pre-judgment and post-judgment interest on such monetary relief;

E.      grant appropriate injunctive and/or declaratory relief, including, without limitation, an order enjoining Defendants from disbursing, transferring or disposing of any assets including the payments received from the Class, appointing an independent party to provide a complete review of the status of all orders and inventory, requiring Defendants to provide a full accounting with respect to all outstanding orders, requiring Defendants to provide curative notice to Plaintiffs and members of the class with this information, preventing Defendants from accepting additional orders until further ordered by the Court, declaring the lost profits and consequential damages limitations in the terms and conditions to be unenforceable, and requiring Defendants to, at a minimum, refund Plaintiffs and Class members for their purchases and loss opportunity to mine Bitcoins during the pending delivery timeframe and compensate Plaintiffs and the Class for their lost return on investment;

F.      award reasonable attorneys' fees and costs; and

G.      grant such further relief that this Court deems appropriate.

Plaintiffs' First Amended Complaint

## <u>JURY DEMAND</u>

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Dated:  June 30, 2014                                    Respectfully submitted,


                                                  By:    */s/ Benjamin F. Johns*
                                                         Kimberly Donaldson Smith
                                                         Benjamin F. Johns
                                                         CHIMICLES & TIKELLIS LLP
                                                         One Haverford Centre
                                                         361 West Lancaster Avenue
                                                         Haverford, PA 19041
                                                         Telephone: (610) 642-8500
                                                         Facsimile: (610) 649-3633
                                                         E-mail:  KMD@chimicles.com
                                                         BFJ@chimicles.com


                                                         ***Proposed Lead Attorneys for Plaintiffs and the Class***

H0037264.

- 48 -

Plaintiffs' First Amended Complaint

**CERTIFICATE OF SERVICE**

I, Benjamin F. Johns, certify that I caused the foregoing Plaintiffs' First Amended

Complaint (and exhibit thereto) to be filed on this 30th day of June, 2014 using the Court's

CM/ECF system, thereby causing it to be served upon all counsel of record in this case.

*/s/ Benjamin F. Johns*
Benjamin F. Johns

Plaintiffs' First Amended Complaint